## CHARLESTON.

### MURDOCK *v.* FRANKLIN INS. CO.

Submitted June 25, 1889.—Decided November 20, 1889.

1. INSURANCE—LIMITATION.

   A policy of insurance provides that proof of loss shall be furnished to the insurance company within thirty days from the date of the loss, and that all claims under it shall be barred, unless prosecuted within six months from the same date, and also provides

that the loss shall be paid in sixty days after proof of loss. The six-months limitation begins to run at the close of the sixty days allowed the company for payment, not from the actual loss.

2. INSURANCE—DAMAGES.

One person charters of another a barge to be employed by him in the conveyance of freight in a business trip for profit, and has the barge in his custody and possession. He has an insurable interest in the barge, and may insure it in his own name, not only for his own protection, but also for the protection of the owner of the barge ; and if his act of so insuring it was authorized by the owner, or is ratified by him, suit may be maintained upon the policy, in case of loss, and damages recovered to indemnify the loss of the owner of the barge, not merely the loss of the charterer.

3. INSURANCE—CONSTRUCTION OF STATUTES.

Statutes are to be construed to have a prospective operation, unless a contrary intention in the legislature is manifest and plain.

4. INSURANCE—CONSTRUCTION OF STATUTES—INTEREST.

In an action on a contract, a verdict is rendered for the plaintiff for a sum of money while section 14, c. 131, Code 1868, as originally enacted, was in force, providing that judgment should be entered for the amount found, with interest from the date of the judgment ; and judgment is not entered on such verdict until 1887, when said section 14, as amended by chapter 120, Acts 1882, is in force, providing that on verdicts judgments shall be rendered, with interest from date of verdict. Such judgment should have called for interest from its date, according to the law in force when the verdict was rendered, and not from the date of the verdict.

*Caldwell & Caldwell* for plaintiff in error.

*W. P. Hubbard* for defendant in error.

BRANNON, JUDGE :

J. Thomas Murdock instituted an action of covenant for use of John M. Hare, in the Circuit Court of Ohio county, upon a policy of marine insurance, against the Franklin Insurance Company for loss of a barge, and there was a demurrer to the plaintiff's evidence by the defendant, and a verdict assessing the plaintiff's damages subject to it, and a judgment for the plaintiff for such damages. The said company has sued out this writ of error.

The brief of appellant's counsel contends that the action is barred by the limitation provided in the policy, "that, in all

cases of loss or damage, the assured shall furnish to the said company the proofs of the same within thirty days from the date thereof, and all claims under this policy shall be barred, unless prosecuted within six months from the same date." There is a provision, also, in this policy, that, "in case of loss, such loss to be paid in sixty days after proof of loss, proof of interest, and adjustment exhibited to the assurers." The loss occurred from the sinking of the barge Joseph McDonald in the Cumberland river, April 8, 1868. Proof of loss was furnished May 23, 1868, and action was commenced November 2, 1868.

Much discussion has occurred in courts of other states upon clauses in insurance policies limiting the period for bringing suits upon them for losses. The company contends that the six months commenced to run from date of loss; the plaintiff contends that it began at the close of the sixty days given the company for payment, which was sixty days after proof of loss. "Where the policy provides that the loss shall be payable within sixty days, ninety days, or any other period after proof of loss is made, an action brought inside of the period limited is premature." Wood, Ins. § 436; May, Ins. § 476. Some courts have held that the letter of the limitation must govern, and that the period begins from the loss. *Johnson* v. *Insurance Co.*, 91 Ill. 92; *Moore* v. *Insurance Co.*, 72 Iowa, 414, (34 N. W. Rep. 183) if the latter case can at all be said to hold this. But the great weight of authority is in support of the text of Wood, Ins. § 443: "When a policy stipulates that no action shall be brought unless commenced within a certain time after loss or damage shall accrue, and there is a provision in the policy that the company will pay in thirty, sixty, ninety, or any other number of days after proofs of loss have been served, the limitation does not attach until after the period which the company has in which to pay the loss has expired. The limitation can not apply until a right of action has accrued, and, until the period which the company has to pay the loss in has expired, no right of action exists." *Mayor* v. *Insurance Co.*, 39 N. Y. 45; *Chandler* v. *Insurance Co.*, 21 Minn. 85; *Ellis* v. *Insurance Co.*, 64 Iowa, 507, (20 N. W. Rep. 782); *Hay* v. *Insurance Co.*, 77 N. Y. 235; May, Ins. § 479.

The case in' this Court of *Barber* v. *Insurance Co.*, 16 W. Va. 658, strongly leans to, in effect sustains, this position. The policy involved in that decision contained a provision that the loss should be paid sixty days after proof, and, further, that either party might ask an arbitration, and that no suit should be brought until afterwards, and a provision that no suit should be maintained unless within six months after the loss should occur. This Court held that it provided for an indefinite period before suit, and that the "intent of the parties to the contract was that the six-months limitation should commence to run when the cause of action accrued, and not befowe." There that was upon the award. Here no arbitration is provided, nor can we say an indefinite period is to elapse before suit; but it is provided that the company has sixty days in which to pay after proof of loss. So, that case is authority for the position (1) that the limitation does not begin until cause of action accrues; and (2) that it does not begin from the actual loss—thus departing from the letter of the policy.

The company insists that it denied its liability by letter from its secretary on April 25, 1868, saying: "I do not think there is any liability on this company for the loss of said barge; hence I can not give you any instructions in the case. Supposing that you will be here soon, we will then give you our reason for this opinion." This is not an absolute, unqualified denial of liability, but contemplated further interview; and were it such, according to the opinion in 2 Pars. Mar. Ins. 480, the insured must wait until the time for payment has gone.

It is next contended by counsel of appellant that Murdock had no insurable interest in the barge Joseph McDonald, and that at any rate, under this policy, Hare, the owner of it, could not take its benefit, because of its being expressly, "on account of steam-boat Charleston and owners." The policy reads. "On account of steam-boat Charleston and owners, loss payable to Captain Thomas Murdock. This policy of insurance witnesseth that the Franklin Insurance Company, by these presents, do cause to be insured, lost or not lost, in the sum of one thousand dollars, on the barge James McDonald, towed by the steam-boat Charleston, from

Wheeling" *etc.* It was plain that it was the intention of the parties to insure against loss to the barge. Murdock's relation to it, having chartered it of its owner, Hare, and being in possession and custody of it for the trip for business for profit, gave him an insurable interest in it. Parsons, in his work on Marine Insurance, (volume 1, p. 161) asks and answers the question: "What is the interest in the property which is the subject-matter of the insurance which shall make the contract valid? We think the best definition to be, any such interest as shall make the loss of that property a pecuniary damage to the insured. The most common form of this is the direct interest of absolute ownership. But it is certain that the insured need not be an owner, if he be so circumstanced with respect to the property that he will derive some pecuniary benefit from the safety of the thing or its continued existence, and some injury from its destruction." This doctrine is supported by high authority. *Lucena* v. *Crafurd*, 2 Bos. & P. N. R. 296; *Buck* v. *Insuranee Co.*, 1 Pet. 151; opinion in *Hooper* v. *Robinson*, 98 U. S. 538. A charterer may insure. *Bartlet* v. *Walter*, 13 Mass. 267; *Robins* v. *Insurance Co.*, 1 Hall, 325. The very fact that the company, having opportunity to inquire, if it wished, as to the interest of the assured, and that it did issue to him a policy, is *prima facie* evidence of his insurable interest, placing the burden on it to disprove it. *Sheppard* v. *Insurance Co.*, 21 W. Va. 368. Thus, Murdock has relations recognized by the law of insurance to this barge, and was not a mere stranger to it. Then the further question arises, did this policy cover only Murdock's interest, or also that of Hare? We think it covered the interest of Hare as owner of the barge. The fact that the policy is "on account of steam-boat Charleston and owners," and that this barge is the thing insured, and that it was to be towed by the steam-boat, leads us to the conclusion that this word "owners" was intended to cover the ownership of the barge, and, at any rate, that oral evidence may be heard to establish that fact. Murdock's evidence is that he stated, when the policy was negotiated, to the company, that the policy was to protect himself and Hare, the owner of the barge. He was the charterer or bailee of the barge, and

acted herein as agent of Hare. The opinion in *Hooper* v. *Robinson*, 98 U. S. 538, lays down the proposition that "the agent, factor, bailee, carrier, trustee, consignee, mortgagee, and every other lienholder may insure to the extent of his own interest in that to which such interest relates; and by the clause 'on account of whom it may concern,' for all others, to the extent of their respective interests, where there is previous authority or subsequent ratification." The syllabus announces that a policy to A., "on account of whom it may concern, or with other equivalent terms, will inure to the interest of the party for whom it was intended by A." It seems to us the word "owners" in this policy meets this requirement, and thus includes Hare's interest, as we do not think it was intended to refer to owners of steamboat. The words "on account of owners" mean any one intended who is an owner of the thing insured. 1 Pars. Mar. Ins. 47.

But outside of the principle that there must be words like "or whom it may concern," or any aid from the word "owners," in this policy, this Court has gone further in *Sheppard* v. *Insurance Co.*, 21 W. Va., 368, holding that, "if a party has the care and custody of property, he may insure it in his own name, even though he be not responsible for its safety, if he really insured it for the owner, though this be not expressed on the face of the policy, for, in such case, he has an insurable interest; and, in general, to give a party an insurable interest in property, it is not necessary that he should have any actual right of property, either legal or equitable, in the subject insured, but it is sufficient if he, or those whom he represents, will suffer any sort of loss by its destruction." And in *Deitz* v. *Insurance Co.*, 31 W. Va. 851, (8 S. E. Rep. 616) it is held that "where a contract, not under seal, is made by an agent in his own name, for an undisclosed principal, either the agent or the principal may sue upon it, and parol evidence is admissible to enable the principal to show that he is the real contracting party." Hare ratified Murdock's act of insurance, and this policy was assigned to him.

The courts are justly liberal to the insured in these matters, because the company has insured the property against

loss, and when loss comes it is only holding it to do what it contracted to do, and it can not harm it beyond what it contemplated when it issued the policy that the owner take the benefit, though not named, under one who acted for him.

Appellant suggests that the declaration is in the name of Murdock, in his own right, and on a policy treated by the declaration as made to him, and averring the barge to be his also; whereas the evidence shows that the ownership of the barge was in Hare, and only a mere right and possession in Murdock as charterer, and the loss proven is thus Hare's, not, as the declaration states, a loss to Murdock by destruction of his property. It is settled by *Deitz* v. *Insurance Co.*, *supra*, that an agent upon a contract made in his name, for an unnamed principal, may sue in his own name. In declaring on such a contract, he is to follow its letter, treating himself as holding the legal title under it as payee or contractor. The fact that he may sue in his own name imports that as the contract is in his own name, he may plead on it as such. If he may sue in his own name, why, in describing the property, may he not describe it as in the contract as his and the loss as to his property?

The case of *Deitz* v. *Insurance Co.*, decides that an agent may take an insurance in the name of himself for property not owned by him, and sue on the policy in his own name. Thus, in effect, it holds that an agent may insure another's property without the words "and owners" or other equivalent words, and sue in his own name for the use of another party. If so, must he not necessarrily, in declaring upon the policy, allege the property and consequent loss as his? It will be said that in *Deitz* v. *Insurance Co.* a statement, treated as part of the declaration, averred the property to belong to the true owner, but that such is not the case here. That statement prevented any variance between the allegation of property and proof of property, both showing the property to be in the wife; but it is not perceived that it altered the right, existing without it, of the agent to sue and declare in his own name. When, in this case, the evidence came, it showed that the absolute owner of the property was Hare, not, as the declaration alleged, Murdock; but with it was evidence that

Murdock had lawful possession of the property, and as agent
insured it—facts which operated to nullify the variance, and
made that no variance which without such facts would have
been a variance. "The agent's right to sue in his own name,
where (as here) the instrument is in terms payable to him, is
the same, whether it be a promissory note, bill of exchange,
check, bill of lading, policy of insurance, bond and the like
instances." 1 Wait, Act. & Def. 279. In policies of insur-
ance it is a common practice to bring your action either in
the name of the agent or principal. *Sargent* v. *Morris,* 3
Barn. & Ald. 277, cited 3 Rob. Pr. (New) 35. Again, Mur-
dock was, as charterer of this barge, a bailee in actual pos-
session, having thus a special or qualified property. As such
bailee he could maintain trespass or trover for its injury or
loss. 3 Rob. Pr. (New) 415, 416. No proposition is better
settled than that either bailor or bailee may maintain action
in respect of it against a wrong-doer—the latter by virtue of
his possession ; the former by reason of his property. 2 Rolle,
Abr. 551 ; Com. Dig. "Trespass ;" 3 Rob. Pr. (New) 416 ; 6
Wait, Act. & Def. 104; 2 Add. Torts, § 520; 1 Hill. Torts, 494.
· In criminal pleading property may be laid in the indict-
ment as the property of bailee having special property. 2 Bish.
Crim. Proc. § 721. No matter that the recovery by the
agent or bailee, when effected, will be for the use of another.
The court's opinion in *Rhoades* v. *Blackston,* 106 Mass. 334 :
"It is a well-established rule of law that when a contract, not
under seal, is made with an agent in his own name, for an
undisclosed principal, either the agent or the principal may
sue upon it. If the agent sues, it is no ground of defence
that the beneficial interest is in another, or that the plaintiff,
when he recovers, will be bound to account to another. There
is an additional reason for giving this right to the agent
when he has a special interest in the subject-matter, or a
lien upon it. But the rule prevails when the sole interest
under the contract is in the principal. The agent's right is,
of course, subordinate to and liable to the control of the
principal, to the extent of his interest. He may supersede it
by suing in his own name, or otherwise suspend or extinguish
it, subject only to the special right or lien which the agent
may have acquired." See Wood. Ins. § 279.

Again, if the word "owners" in this policy, like the words "or whom it may concern" or "owners," as I have above held, Murdock might sue on it for the use of Hare. Wood, Ins. 818, lays it down that "where the policy is open, and payable 'to whom it may concern,' an action may be maintained in the name of any person having an insurable interest in the property, whose interest and relation to the property is such that he can be said to have been within the contemplation of the parties, and the declaration must show such interest and relation; or the person interested may maintain an action in the name of the assured, for his benefit, and such is the better practice." I presume, in the latter case, the declaration would be on the property as that of the assured.

Again, no objection was made or exception taken to the introduction of the evidence that Hare was the owner of the absolute property in the barge. Had this objection been made in the trial court, it could have been remedied under our statute of amendment. Not having been made, it is too late to raise it for the first time in this Court. *Harrison v. Bank*, 6 W. Va. 1; *Cook v. Hays*, 9 Gratt. 142. The policy treated and recognized Murdock as the owner of the barge, and promised him payment of the policy. When a note is made to a corporation, this estops the denial of its existence. Here the policy must be held as recognizing his title for its purposes, and the fact that the evidence showed that he had a special property while Hare had the absolute property would not seem to produce a variance. If there had been an averment of this property in Hare, would it have defeated Murdock's recovery, the policy being payable to him? If not, why is such averment necessary? To prevent surprise? That would be a fact which would not be in law a surprise, for the special property in Murdock would prevent its so operating. Will not a recovery in this action of the whole loss bar Hare from another action for the same cause? Appellant's counsel next insists that the damages ($1,244.85) were excessive, and for that cause the verdict should have been set aside. Not deciding whether the motion to set it aside, made March 2, 1887, was too late, or could be entertained, we can not say that it was excessive. The policy fixes the valuation of the barge at $2,000.00, the sum insured

at $1,000.00, and thus it was a valued policy, and there was total loss. Valued policies bind the insurer to pay the whole sum insured in case of total loss. Wood. Ins. § 41; Pars. Mar. Ins. 260, and note. Murdock's evidence puts the barge's value at $1,500.00 to $2,000.00 at least, and Shipley's at $2,000.00 at least. Taking the view we do, that this policy covers, not merely Murdock's insurable interest, but also the property of Hare as owner, we can not say the sum is excessive. "Agents, commission merchants, or others having the custody of, and being responsible for, property, may insure in their own names; and they may, in their own names recover of the insurer, not only a sum equal to their own interest, * * * but the full amount named in the policy, up to the value of the property." *Wariny* v. *Insurance Co.*, 45 N. Y. 606.

The last point made by the brief of appellant's counsel is that the verdict having been rendered on May 25, 1873, and judgment on May 28, 1887, it was error to make the sum found by the verdict bear interest from date of verdict, as the judgment does. We concur in this view. At the date of the verdict it was provided by Code 1868, c. 131, § 14, that the jury should find the amount of principal and interest due at the time of the trial, and judgment should be rendered for that amount, with interest from the date of the judgment. Chapter 120, Acts 1882, amending this section, provided that judgment should be rendered for the amount of the verdict, with interest from the date of the verdict. Thus, the law in force when the verdict was rendered did not impose the burden of interest from the verdict, if any time should elapse before judgment. The matter of interest upon a sum found by a verdict is of statute regulation, and the then law at once, upon the return of the verdict, attached to it, fixing the rights of the parties to it, and by that they must be governed. The act of 1882 does not expressly apply (if it effectually could) to verdicts rendered before it became a law, and we should not give it a retrospective operation, and thus place a burden on the defendant which by the law in force at the date of the verdict he would not bear. Though the

legislature may have the power to make a law operate retrospectively, it must clearly appear that such was the intention, the presumption being that it was intended to operate on future transactions. *Duval* v. *Malone* 14 Gratt. 24; Cooley, Const. Lim. 370; Wade, Retro. Laws, § 34; *McCance* v. *Taylor*, 10 Gratt. 585. The language and manifest intent of this fourteenth section, as re-enacted in 1882, bear evidence that it was designed for future verdicts. Though it be hard on the plaintiff to get no interest for the long space from the verdict to judgment, such is the right of the parties. It may be true, as contended by appellee's counsel, that a policy of insurance bears interest after loss; but that policy is so far merged by the verdict—by the proceedings in the court towards final judgment—that we can not look to it, but must go by the statute.

Being of opinion that in this matter of interest the Circuit Court erred, the judgment must be reversed with costs to appellant in this Court; and this Court, proceeding to render such judgment as the Circuit Court should have rendered, thereupon it is considered that the plaintiff recover from the defendant $1,244.85, the damages by the jury in their verdict assessed, with interest thereon from the 28th day of May, 1887, until payment, and also his costs about his suit expended.

REVERSED.