## STEEL v. PHENIX INS. CO. OF BROOKLYN.

(*Circuit Court of Appeals, Ninth Circuit.* July 18, 1892.)

1. FIRE INSURANCE—REFORMATION OF CONTRACT—RECEIVERS.
   A policy of insurance issued to "E. S. Kearney, receiver for Holladay v. Holladay, * * * on their one-half interest in the four-story frame building," etc., sufficiently shows the intent to insure the receiver as the representative of such interest, and no reformation of the policy is required to enable his successor in the receivership to sue thereon.

2. SAME—WAIVER OF CONDITIONS—TIME FOR BRINGING SUIT.
   A delay in suing on an insurance policy for more than the 12 months allowed by the policy is no bar to an action, if the delay was caused by the promises of the company's agent that the loss would be paid. 47 Fed. Rep. 863, reversed.

3. SAME—PERIOD OF LIMITATION—CONSTRUCTION OF CONDITIONS.
   A condition in an insurance policy that no suit can be maintained unless brought within 12 months "after the date of the fire," should be so construed as to give 12 full months during which the insured has a right to sue; and when, by another clause, the policy does not become payable until 60 days from the proofs of loss, suit may be brought within 12 months from the expiration of the 60 days. McKENNA, J., dissenting. 47 Fed. Rep. 863, reversed.

Appeal from the Circuit Court of the United States for the District of Oregon. Reversed.

*Williams & Wood,* for appellant.

*Cox, Teal & Minor* and *W. S. Goodfellow,* for appellee.

. Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. On the 21st day of April, 1884, the Phenix Insurance Company of Brooklyn, in consideration of $300, subject to the terms and conditions expressed in the policy of insurance, insured—

"E. S. Kearney, receiver for Holladay v. Holladay, against loss or damages by fire, to the amount of five thousand dollars, as follows: $4,000 on their one-half interest in the four-story frame building occupied as an hotel, and known as the 'Clarendon Hotel,' * * * Portland, Oregon; $1,000 on their one-half interest in the hotel furniture while contained therein; * * * to make good unto the said assured, their executors, administrators, and assigns, all such immediate loss or damage, not exceeding in amount the sum or sums insured, * * *. as shall happen by fire to the property so specified, from the 27th day of April, 1884, at 12 o'clock at noon, to the 27th day of April, 1885, at 12 o'clock at noon; the amount of loss or damage * * * to be paid sixty days after the proofs of the same required by the company shall have been made by the assured, and received at the office in Chicago."

This policy contained 13 specific conditions, besides several notes and paragraphs. The tenth provided for the selection of arbitrators in the event the amount of the loss could not be determined by mutual agreement. The thirteenth reads as follows:

"(13) It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company, for the recovery of any claim by virtue of this policy, shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within twelve months next after the date of the fire from which such loss shall occur; and, should any suit or action be commenced against this company after the expiration of the aforesaid twelve months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

At the time of the execution and delivery of this policy the insurance company well knew that the title to said property was in dispute in the suit of Holladay v. Holladay, and that said Kearney was in possession of the property merely as the receiver in said suit, and had no interest therein of any nature, except as such receiver. On May 14, 1884, an order was made in said suit accepting the resignation of said Kearney as receiver, and appointing D. P. Thompson as receiver in his stead. On the 19th day of May, 1884, the said Thompson duly qualified as such receiver; and thereafter, on the night of the same day, the said insured property, without any fault, failure, neglect, or omission on the part of said Kearney, Thompson, or of any other person, was totally destroyed by fire, and a loss was sustained in a sum greater than the amounts specified in the policy.

This suit was commenced on the 10th day of July, 1885,—13 months and 21 days after the fire,—by Thompson, as the successor of Kearney in the receivership, to reform the policy so as to be made payable to the receiver and his successors in office, for the benefit of whom it might concern, and for a decree to recover the amount due upon said policy. A demurrer to the original bill was sustained on the ground that the plaintiff's right of action was barred because the suit was not commenced "within 12 months next after the date of the fire from which the loss occurred." *Thompson* v. *Insurance Co.*, 25 Fed. Rep. 296. An amended bill was thereafter filed, alleging conduct on the part of the insurance company which, it was claimed, amounted to a waiver of the limitation of time for the commencement of the suit. A demurrer to this bill was also sustained, and the suit dismissed. From that decree an appeal was taken to the supreme court of the United States, and the decree was reversed upon the ground that the allegations of the amended bill showed a waiver of the limitation as to the time of bringing the suit. *Thompson* v. *Insurance Co.*, 136 U. S. 299, 10 Sup. Ct. Rep. 1019. On July 12, 1886, Thompson was removed from the receivership, and G. W. Weidler and Joseph Holladay were appointed in his place. Thereafter the suit of Holladay v. Holladay was decided in favor of Ben Holladay, and the receivers were discharged. On July 8, 1887, Ben Holladay died, and on June 3, 1889, James Steel, his administrator, was made plaintiff in this suit. Thereafter this suit was again tried, and the court held that the allegations of the amended bill were not sustained by the evidence, and dismissed the suit. *Steel* v. *Insurance Co.*, 47 Fed. Rep. 863. From this decree the present appeal is taken.

1. Can the policy be reformed? The right of plaintiff to have the policy reformed, if the action can be maintained after it is reformed, so as to be made payable to the receiver or his successor in office, and thereby conform to the intention of the parties,—if any reformation in that respect is necessary,—is, by the admissions in the answer and proofs upon the trial, rendered too clear for any discussion upon the subject. It is, however, proper to state, in this connection, that we are of opinion that the intent of the parties appears upon the face of the policy itself, and that no reformation is required in order to enable plaintiff to maintain the suit as a representative of the interest of Holladay in said property.

2. Are the allegations of the amended bill as to the conduct of the insurance company in delaying the commencement of the suit sustained by the evidence? These allegations are, in substance, that the insurance company, by its duly-authorized agents, assured the plaintiff about 30 days after the fire, and after the acceptance of the proofs of loss, that no question was made as to the loss or its payment, except that the company was considering the fact of the change in the receivership, and that it would undoubtedly pay the loss claimed; that as late as June 27, 1884, the premium of $300 was paid to the company, which by its agents again assured the plaintiff that the loss would be paid as soon as action could be taken; that after 60 days had elapsed from the delivery

of the proofs of loss the company, by its agents, repeatedly gave the same assurances; and that, by reason of such promises and assurances, plaintiff neglected, "for some time after 60 days from the delivery of the proofs of loss, to bring suit for the recovery of the loss sustained." The testimony in support of these allegations is very brief. It is admitted that the payment of the premium of $300 was made on the 27th of June, 1884, as alleged in the bill. Thompson testified that the agent of the company stated to him "that the premium had not been paid; that it would facilitate settlement;" that he paid it; that he threatened to bring suit against the company if the loss was not paid; that the agent offered to settle by paying one half of the amount specified in the policy rather than have any suit about it; that he refused to accept this offer; that the agent then told him "that he thought that the company would pay the amount; he thought they would, but he was not authorized to say; he thought they would pay it, and advised me not to bring a suit; it would complicate matters somewhat, and he thought I had better not do it; urged me not to do it;" that this was very soon after the 60 days expired; "I cannot give the date or time; I have no *data*, and it has been a good many years since;" that he was first informed that the company would not pay the loss after the 60 days had expired in which to make the proofs; that after this the agent of the company promised to refer the matter to the home office, and they were some time, as a matter of course, getting their answer from them; that he could not give the exact time when he gave up any hope of negotiating with the company for a voluntary settlement; that it may have been one month, it may have been two, or it might have been three months from the expiration of the 60 days. The answer of the company alleges that notice was given to Thompson on the 31st day of August, 1884, "that the defendant denied any liability upon said policy, and did refuse, and would at all times refuse, to pay said loss."

The insurance company rely upon an answer given by Thompson to a question propounded to him to show that there was no delay in bringing the suit which was caused by any conduct upon the part of the company. "*Question.* Did you delay bringing a suit in consequence of those statements made to you by the agent? *Answer.* I cannot say now. I do not remember." This answer of the witness must be taken with reference to the other portions of his testimony, which stated the facts showing beyond any controversy that the bringing of the suit was delayed for one, two, or three months,—some time after the expiration of the 60 days.

The supreme court, in deciding that the allegations in the amended bill were sufficient, said:

"If, as the allegations of the amended bill imply, the failure of the plaintiff to sue within the time prescribed by the policy, computing the time from the date of the fire, was due to the conduct of the company, it cannot avail itself of the limitation of twelve months. *Curtis* v. *Insurance Co.*, 1 Biss. 485, 487; *Ide* v. *Insurance Co.*, 2 Biss. 333; *Grant* v. *Insurance Co.*, 5 Ind. 23, 25; *Mickey* v. *Insurance Co.*, 35 Iowa, 174, 180. In the case last cited it was

properly said that it would be contrary to justice for the insurance company to hold out the hope of an amicable adjustment of the loss, and thus delay the action of the insured, and then be permitted to plead this very delay, caused by its course of conduct, as a defense to the action when brought."

The following authorities are to the same effect: *Ames* v. *Insurance Co.*, 14 N. Y. 264; *Killips* v. *Insurance Co.*, 28 Wis. 483; *Insurance Co.* v. *Brodie*, 52 Ark. 11, 11 S. W. Rep. 1016; *Insurance Co.* v. *McGregor*, 63 Tex. 404.

In the Texas case the court said:

"If the course of conduct pursued by the appellant was such as to induce the appellee to believe that the loss would be adjusted and paid without suit, and for this reason suit was not brought within the time prescribed, then, under well-settled principles applicable to such cases, this action may be maintained on the policy, even after the expiration of the time therein prescribed."

The views expressed by the supreme court of the United States are as applicable to the evidence in this case as to the allegations of the bill. The most that was claimed in the bill was that by the conduct of the insurance company the plaintiff was delayed in bringing the suit for some time after 60 days from the delivery of the proofs of loss, and this is shown by the evidence.

3. The contention of the insurance company is that its conduct, in any event, only prevented this suit from being brought for five months after the fire, and that this only amounted to a waiver of so much of the limitation, and that, as there still remained seven months—a reasonable time—within which to bring the suit, the action is barred, because not brought "within twelve months next after the date of the fire." Is this contention sound? Is it supported by any substantial reason? When does the 12-months limitation commence to run? Is it from the date of the fire, or from the expiration of 60 days after the proofs of loss were furnished? Numerous and respectable authorities can be found in support of either view, and, inasmuch as they are in direct conflict, it becomes the duty of this court, upon the first presentation of the question, to determine which view is sustained by the weight of reason, and ought in justice to be followed. In several of the authorities, where these questions have been discussed, the policies of insurance provided that no suit could be sustained unless brought within six or twelve months "after the loss shall have occurred," instead of "after the fire," and some of the cases intimated that the language should be construed differently. We are, however, of opinion that there is *no real or substantial difference* in principle between the meaning of the words "loss" or "fire" as used in the policies. The loss occurs at the time of the fire. If the provision in the policy is to be construed solely with reference to the language of the clause in which the limitation is expressed, independent of any other fact or condition expressed in other clauses of the policy, then, of course, the suit cannot be maintained unless brought "within twelve months next after the date of the fire from which such loss shall occur." It is the duty of courts, however, to arrive at the intention of

the parties by an examination and consideration of the entire instrument, its various clauses and conditions, and the objects and purposes which the parties had in view at the time of the execution, acceptance, and delivery of the policy. In determining the intention of the parties, it is our duty to examine the whole instrument in order to ascertain, if possible, the true meaning of clauses which, in a certain light, might be deemed contradictory, and to gather, from the various clauses, the real object and purpose which the parties intended by the instrument as a whole. When this is ascertained, then the language of the clause in controversy must be so interpreted as to give full force and effect to the true intention of the instrument as a whole.

With these general rules, applicable to the construction of all written instruments,—whether it be a deed, contract, or policy of insurance,—we shall proceed to an examination and review of certain other conditions in the policy. After the fire the insured is required to give notice of any loss, and to make the necessary and satisfactory proofs thereof, and the company is allowed 60 days after such proofs have been received at the home office, in Chicago, to pay the amount of loss or damage sustained. Under this clause, no suit could be commenced until after 60 days, at least, from the time of the fire. This would leave only 10 months instead of 12 months, within which time suit could be commenced.

In the thirteenth condition, the one wherein suit is allowed to be brought "within twelve months next after the fire," is an express proviso that no suit against the company shall be maintained in any court " until after an award shall have been obtained, fixing the amount of such claim." As there has been no award in this case, it follows that, if the award clause is to be considered of full force and effect, and construed solely with reference to the language used in this particular clause, then the remaining 10 months has expired ; and by the literal interpretation of independent clauses, which of themselves are plain, clear, and unambiguous, it actually happens in this case that the right of action was barred before it accrued under other provisions, and this condition of affairs is accomplished without any act, fault, or negligence on the part of the insured. This of itself justifies us in going beyond the mere words of any particular clause in order to ascertain the meaning of the clause and the intention of the parties. The insurance company, it is true, does not rely upon the award clause, and we refer to it simply to illustrate the weakness of its contention that another clause, upon which it does rely, should be literally construed, because the language used therein is clear, plain, and unambiguous. The company might have claimed that, according to the award clause, the suit was brought too soon; but such a contention would be manifestly absurd. Why? Because it is evident that the parties never intended that such a result should be accomplished, under the facts in this case. This is made perfectly clear by a reference to the other provisions in the policy, to the effect that the amount of the loss or damage might be determined by mutual agreement between the parties, and, in the event of their failure

to agree, then arbitrators might be chosen; and it appearing that the company, after five months of occasional promises to pay, finally decided that it would not pay the loss, this conduct was, of course, a waiver of the right to rely upon the award clause. Upon like reasoning, why should not their conduct in causing a delay of time in the bringing of the suit, when suit was threatened, be a waiver of the time in the limitation clause? A policy of insurance which contains conditions reducing the statutory time for the commencement of any suit thereon ought, in justice and equity, to be so construed—if reasonable under all its terms—as to give the full period of time mentioned in the policy, freed from the provisions of all other clauses of the policy, or from the conduct of the insurance company, limiting, or attempting to limit, the time actually given in the limitation clause. This, it appears to us, is the consistent and logical view that ought to be taken of such policies of insurance. It is fair to the insurance company, and just to the insured. It would prevent either party from taking any undue or improper advantage of the other. The unwary could not be led into a trap, and caught by any misrepresentation or delusive promise. The condition in this policy which provides that no suit can be maintained for the loss incurred, unless "commenced within twelve months next after the date of the fire," should therefore be construed—in the light of all the other clauses and conditions—to mean 12 full months, not 10 months nor 7 months nor 1 month nor 1 day, in which to bring the suit, exclusive of the time when suit could not be brought, either by other clauses or by any conduct of the company preventing the insured from bringing suit. In this case the right to bring suit being postponed in one clause of the policy for 60 days after the proofs of loss were furnished, the 12-months limitation contained in another clause does not commence to run until after the expiration of the 60 days. This suit was therefore brought in time.

The construction we have given to this policy is in accord with common sense, which is said to be the soul and spirit of the law. It is in unison with sound legal and universally recognized interpretations of written instruments, as well as with the justice and equity of the case. It is correct in principle, and is supported by the great weight of the authorities. *Friezen* v. *Insurance Co.*, 30 Fed. Rep. 352 ; *Vette* v. *Insurance Co.*, Id. 668 ; *Spare* v. *Insurance Co.*, 17 Fed. Rep. 568 ; *Chandler* v. *Insurance Co.*, 21 Minn. 85 ; *Mayor* v. *Insurance Co.*, 39 N. Y. 45 ; *Steen* v. *Insurance Co.*, 89 N. Y. 315 ; *Ellis* v. *Insurance Co.*, 64 Iowa, 507, 20 N. W. Rep. 782 ; *Miller* v. *Insurance Co.*, 70 Iowa, 704, 29 N. W. Rep. 411 ; *Barber* v. *Insurance Co.*, 16 W. Va. 658 ; *Murdock* v. *Insurance Co.*, 33 W. Va. 407, 10 S. E. Rep. 777 ; *Case* v. *Insurance Co.*, 83 Cal. 473, 23 Pac. Rep. 534 ; *Owen* v. *Insurance Co.*, 87 Ky. 574, 10 S. W. Rep. 119.

In *Friezen* v. *Insurance Co.* the fire occurred June 23, 1885. Proof of loss was made July 31, 1885. The loss was not payable "until sixty days after proof of loss." Suit was commenced February 24, 1886, 7 months and 1 day after the fire, but within 5 months and 24 days after

v.51f.no.11—46

the 60 days after the proof of loss. The policy provided that no suit should be sustainable unless "commenced within six months after the fire had occurred." Bunn, J., held that the suit was commenced in time; "that what the parties contemplated was that, after the loss became due and payable, the assured should have six months, within any part of which time he might bring his suit."

In *Vette* v. *Insurance Co.*, where the provision in the policy was the same as in *Friezen's Case*, except the word "loss" is used instead of the word "fire," THAYER, J., in delivering an oral opinion, hit the nail squarely on the head by saying that he could not see any "good reason for construing the special statute of limitations imported into this contract in such way as to make it operative during a period when, by virtue of other stipulations of the contract, the right of action was suspended."

In *Chandler* v. *Insurance Co.* the court said:

"It is natural that the parties should have intended to refer the commencement of the period of limitation to the date when the cause of action accrued, and that the time during which the assured could not sue should not be counted as part of the year within which they were required to sue."

In *Steen* v. *Insurance Co.* the court said:

"The intention of the defendant was to give the insured a full period of twelve months, within any part of which he might commence his action, and having, by postponement of the time of payment, secured itself from suit, it did not intend to embrace that period within the term after the expiration of which it could not be sued. In other words, the parties cannot be presumed to have suspended the remedy and provided for the running of the period of limitation during the same time. Indeed, the actual case is stronger. Not only was the remedy postponed, but the liability, even, did not exist at the time of the fire, nor until it was fixed and ascertained according to the provision of the policy. Having thus made the doing of certain things, and a fixed lapse of time thereafter, conditions precedent to the bringing of an action, the parties must be deemed to have contracted in reference to a time when the insured, except for that contract, might be in condition to bring an action. Under any other construction, the two conditions are inconsistent with each other."

The language used in the various conditions of the policy is that of the insurance company. Admitting, then, for the sake of the argument, that it could be fairly claimed that two different constructions might be placed upon the language used in the policy, it is nevertheless a wise and well-settled rule, sanctioned and sustained by all the authorities, that the construction should be adopted which is most favorable to the insured; and in cases of any doubt or uncertainty as to the meaning of words, or of inconsistent or contradictory provisions in the policy, as inserted by the company, they are to be construed most strongly against the company. As the insurance company prepares the contract, and embodies in it such conditions as it deems proper, it is in duty bound to use language in the various provisions of the policy in such a manner that the insured cannot be mistaken or misled as to the duties and burdens thereby imposed upon him. The courts have uniformly held that the various conditions of a policy of insurance must be strictly construed

against the company, and liberally in favor of the insured. This principle is applied to all classes of insurance policies, whether fire, life, accidental, or other kinds. *National Bank* v. *Insurance Co.*, 95 U. S. 673; *Moulor* v. *Insurance Co.*, 111 U. S. 335, 4 Sup. Ct. Rep. 466; *Wallace* v. *Insurance Co.*, 41 Fed. Rep. 742; *Cotten* v. *Fidelity, etc., Co.*, Id. 506; *De Graff* v. *Insurance Co.*, 38 Minn. 501, 38 N. W. Rep. 696; *Kratzenstein* v. *Assurance Co.*, 116 N. Y. 59, 22 N. E. Rep. 221; *Burkhard* v. *Insurance Co.*, 102 Pa. St. 262; *Philadelphia Tool Co.* v. *British-American Assurance Co.*, 132 Pa. St. 241, 19 Atl. Rep. 77; *Rogers* v. *Insurance Co.*, 121 Ind. 577, 23 N. E. Rep. 498; *Illinois Mutual Ins. Co.* v. *Hoffman*, 132 Ill. 523, 24 N. E. Rep. 413; *Meyer* v. *Insurance Co.*, 41 La. Ann. 1000, 6 South. Rep. 899.

In *Wallace* v. *Insurance Co.*, McCRARY, J., in construing the award clause in the policy, said:

"If the words employed, of themselves, or in connection with other language used in the instrument, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed in favor of the insured."

In *Kratzenstein* v. *Assurance Co.* the court said:

"Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the doubt should be resolved against the company, because it prepared and executed the agreement, and is responsible for the language used and the uncertainty thereby created."

In *National Bank* v. *Insurance Co.* there was a provision in the policy that if the insured in his application makes any erroneous representation, or omits to make known any fact material to the risk, then the "policy shall be void." The insured made an overestimate as to the value of his property without any fraudulent intent. The insurance company contended that, under any proper construction of the contract, the assured warranted absolutely, and without limitation, the truth of the statement as to the value of his property. The court held that this contention could not be sustained, and based its conclusion—

"Upon the broad ground that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the insured the obligations of a warranty. The company cannot complain of such a rule. Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself."

The judgment of the circuit court is reversed, and the cause remanded, with direction to the court to render a judgment in favor of complainant as prayed for in the amended bill.

McKENNA, Circuit Judge, (*dissenting*.)   I am unable to agree with my associates in their construction of the policy of insurance, and therefore think that this suit was not brought in time.   The provision of the policy is as follows:

"It is expressly provided and mutually agreed that no suit or action * * * shall be sustainable * * * unless such suit or action shall be commenced within 12 months next after the date of the fire from which such loss shall occur.   * * *"

This provision would seem to need no interpretation in other words than its own.   It is so clear and direct as to baffle attempts to make it more so.   I know of no way to express concrete time, except by commencing at a certain date or event, (and the latter because it indicates a date,) and running a certain duration after or to a date or event after. The duration or the interval marks the period, not only as to length, but especially as to time before and time after,—distinguishing it, therefore, and establishing it,—the period commencing at the initial date or event, and immovable from it.   This is important.   The provision of the policy, therefore, is not 12 months to bring a suit only, but 12 months within which to bring a suit and to do other things,—not 12 months to sue after all conditions precedent have been removed or performed, but 12 months within which to remove or perform all conditions precedent and to bring a suit; substantially different things,—as different as a period commencing at one date is different from a period commencing at another date; as different as the year 1891 is from the year 1892.   I do not think the rights of either party to the policy are subserved by confounding these differences.   Limitations of time of bringing suit on policies are sustained by authority, but with the qualification that they must be reasonable.   If the conditions of the policy, therefore, cannot be performed within the period stated, and a proper time be left for bringing suit, the limitations would be unreasonable.   If they should be used to delay or mislead, they would be held to be suspended or waived, as was announced by the supreme court in this case on a former appeal.   136 U. S. 299, 10 Sup. Ct. Rep. 1019.   If the parties did intend to "expressly provide and mutually agree" to limit the right of suit within a particular period, commencing at the fire,—an unambiguous and impressive incident,—how else could they so aptly and adequately express the intention than as they did?   How otherwise could they have so bounded and identified the period, if they meant a fixed period, not a movable period?   "Twelve months next after the fire" is unambiguous.   This is conceded by my associates, but its certainty is made to yield to other provisions of the policy, not more certain, and which are entirely for the benefit of the defendant company.   If the policy is to be construed most strongly against the insurer, why not put it the other way, and make the other provisions yield to the provision for suit, and, as the company has stipulated that the insured shall have "12 months next after the fire" to bring suit, say that he shall have the whole of them, and all provisions suspending or lessening them shall be void? This way is as good as the other, and both bad, because neither ac-

commodates the full purpose of the parties, as I conceive it, which is that the insurer shall have time to investigate a claim,—arbitrate, it may be,—and the insurer shall have a reasonable time to sue. Any policy that does not secure the latter would, as we have seen, be declared unreasonable. Once secured, it cannot be embarrassed by the acts of the insurer. This, we have also seen, was declared by the supreme court in this case. Did the defendant company waive the provision requiring suit to be brought 12 months next after the fire? I do not think the allegations of the complaint that the plaintiff failed to sue by reason of the conduct of the company is sustained by the evidence.