# CHARLESTON.

BAER'S SONS GROCER CO. v. CUTTING FRUIT-PACKING CO.  42  359
                                                    65  199

Submitted June 6, 1896—Decided Nov. 21, 1896.

1. SALE—CONSTRUCTION OF CONTRACTS—DAMAGES.

Where a cargo of prunes are sold under a written agreement containing the following stipulations: "Settlement. By seller's sight draft upon buyer with documents attached. Draft payable upon arrival of goods and delivery of bill of lading. Buyer to be allowed to inspect goods before paying draft. Seller not liable for any portion undelivered if caused by failure of crops, destruction of packing house, or other unavoidable casualties. All disputes to be arbitrated in the usual way. Award to be final and binding. Final rejection by arbitrators on account of

quality or condition to cancel the agreement without damage to either party,"—if the purchaser, after inspecting the goods, rejects them without submitting the question of quality to arbitration, the seller, under the terms of the contract, may receive back the goods without being liable for damage under the contract on account of the quality of the goods.

2. JUDGMENT—AMOUNT OF JUDGMENT—INTEREST.

  In all cases where a judgment or decree is rendered or made for the payment of money it shall be for the aggregate of principal and interest due at the date of the verdict, if there be one, otherwise at the date of the judgment or decree, with interest thereon from such date, except in cases where it is otherwise provided.

EWING, MELVIN & EWING for plaintiff in error, cited 33 W. Va. 229; 35 W. Va. 385; 14 Gratt. 302; 28 Am. Dec. 593; Sedgwick on Damages (6th Ed.) 466 & n.; 15 W. Va. 629; 33 W. Va. 407.

HENRY M. RUSSELL for defendant in error, cited 2 Benj. Sales §§ 966 (note 24) 1042, 1305, 1023 (note 12); 33 W. Va. 86; Code, c. 50, s. 8; Morse, Arb. 91; 1 Am. & Eng. Enc. Law, 664, 665, 667; 22 S. E. Rep. 165.

ENGLISH, JUDGE:

On the 28th day of December, 1894, an action was commenced by Baer's Sons Grocer Company, a corporation, against the Cutting Fruit-Packing Company, before a justice of the peace of Ohio county, claiming three hundred dollars, with interest from the first day of November, 1894, as damages for the failure of the defendant to comply with the terms of sale to plaintiff of one car load of dry prunes. An attachment was also issued against the personal property of the defendant, which was levied on "one car load of prunes in B. & O .car, No. 37,383, of the Continental Line." On the 15th day of April, 1895, the case was heard, and the justice rendered judgment against the plaintiff for costs. On the 22nd day of April, 1895, the plaintiff moved the justice to set aside the judgment rendered therein, which motion prevailed. A new trial was awarded which was set for the 21st day of May, 1895. When the case was reheard a judgment was rendered against the defendant for the sum of three hundred and seven dollars and fifty cents,

with interest thereon from that date and costs, from which judgment an appeal was taken on the 25th day of May, 1895, to the circuit court of said county. Such proceedings were taken on said appeal in the circuit court that on the 7th day of January, 1896, a judgment was rendered in favor of the plaintiff for the sum of three hundred dollars, with interest thereon from the 18th day of December, 1894, until payment, and costs. The case was tried by the court in lieu of a jury, and the defendant moved the court to set aside the judgment and grant it a new trial (1) because the court should have found that it was without jurisdiction of the case, and exceeded its jurisdiction in the judgment rendered; (2) because the judgment was contrary to the law and evidence; (3) because the court erroneously admitted and considered evidence which ought to have been rejected—which motion was overruled, and the defendant excepted, and took a bill of exceptions setting forth the evidence therein, and obtained this writ of error.

The contract to recover damages for the breach of which this action was brought was for the purchase of a car load of dry prunes, which when delivered, it is claimed, failed to comply with the contract. The contract reads as follows: "No. 240. Chicago, August 9, 1894. Bought of Cutting Fruit-Packing Co., San Francisco, one car load California prunes, equal quantity, each four sizes 69-90, in sacks 4½ lb. One car load California prunes, equal quantity, each six sizes, in sacks 40-90, 5c. lb. f. o. b. California Com. shipping point. To be strictly standard quality, 1894 crop. Shipment October, 1894. Settlement by seller's sight upon buyer with documents attached. Draft payable upon arrival of goods and delivery of bill of lading. Buyer to be allowed to inspect goods before paying draft. Seller not liable for any portion undelivered, if caused by failure of crops, destruction of packing house or other unavoidable casualties. All disputes to be arbitrated in the usual way. Award to be final and binding. Final rejection by arbitrators on account of quality or condition to cancel this agreement without damage to either party. [Signed in triplicate.] Buyer Baer's Sons Grocer Co. B. Baer. Wheeling W. Va." It will be perceived that one of the material ele-

ments in this contract of sale was that all disputes were to be arbitrated in the usual way, award to be final and binding, and that .final rejection by arbitrators on account of quality or condition was to have the effect of canceling the agreement without damage to either party. Now, it is contended by counsel for the defendant in error that the defendant did not propose an arbitration, and he comments on the fact that the witness Allinger is uncertain in his testimony whether he, as agent of the plaintiff in error, proposed an arbitration of the matter to Baer's Sons Grocer Company; and while it is true he does not pretend to give the words used by Mr. Baer, he says: "I could get no satisfaction out of him, and you can't arbitrate when a man won't talk to you on the question." He also says he thinks he asked Mr. Baer to fix it up the usual way. When asked, "That you did ask him to arbitrate, either using the word 'arbitrate' or words that meant that?" answered, "Meant arbitrate." But suppose it be true that he did not seek an arbitration from Mr. Baer, whose duty was it to propose the arbitration? Morse, Arb. p. 94, says: "The rules of a Maine insurance company, established on mutual principles, required an award of arbitrators as a condition precedent to a suit, and that the suit should then be brought only for the amount awarded. It was held that those provisions were legal, and binding upon members. The duty of procuring the decision of the referee in cases like the foregoing rests primarily upon the party who will have the claim for payment; *i. e.* upon the plaintiff in the suit to be brought after the right of action shall have accrued. He must use his best exertions to bring about and perfect the agreement of reference. And it seems that his failure to bring it about will enable him to institute suit without it, only in case the obstacle to his success has grown out of the contumacious action of the other party." Now, the controversy in this case grows out of the fact that the defendant in error examined this cargo of prunes on arrival, and without asking for any arbitration or proposing in any manner to submit the question of quality to arbitration, they rejected the entire cargo, for the reason that the prunes in a few of the bags were mixed with plums, brought

suit, and attached the cargo for damages they claimed to have sustained. Turning again to the agreement, we find the defendant in error agreed that all disputes were "to be arbitrated in the usual way; award to be final and binding; final rejection by arbitrators on account of quality or condition was to cancel this agreement without damage to either party." These prunes, however, were rejected by the defendant in error without waiting for the intervention of arbitrators. If arbitrators had been duly and properly selected, they could have done no more. The award of the arbitrators, finding that the prunes were defective, would have been no more effective in prejudicing the interests of the plaintiff in error than the rejection by Baer's Sons Grocery Co. was; the only difference being that, if arbitrators had been selected, and they had rejected the prunes, and the plaintiff in error regarded its agreement, it could not have complained, because the agreement was to be canceled if they were so rejected. Can the defendant in error claim that its rejection of the prunes without demanding or waiting for arbitration places it in any better attitude than it would have been if the prunes had been rejected by the award of the arbitrators? The defendant in error can not be heard to say that the prunes were improperly rejected, as it is alone responsible for their rejection, and, so far as the defendant in error is concerned, the result is the same as if they were rejected by the arbitrators. The agreement signed by Baer's Sons Grocer Company provides that final rejection by arbitrators on account of quality or condition should cancel the agreement without damage to either party. Why, then, should not the rejection of the prunes by Baer's Sons Grocer Company without any arbitration cancel the agreement without damage to the plaintiff in error? The plaintiff in error is not complaining of their rejection, but accepts the situation, and abides by his contract to consider the agreement canceled upon rejection of the prunes on account of quality, which was done in this case. It was the manifest object of the Cutting Fruit-Packing Company, which was shipping its goods to a distant port, to avoid litigation among strangers in the event the merchandise failed to be satisfactory to the

buyer; and for that reason it contracted to submit disputes in regard to quality to arbitration, and if the goods were rejected the agreement was to be canceled, without damage to either party. The goods were rejected by the defendant in error, who is now the plaintiff in this case, and has demanded and obtained a judgment for three hundred dollars damages, with interest and costs. Can this judgment be sustained under the circumstances of this case? It is true, this Court held in the case of *Kinney* v. *Association,* 35 W. Va. 385 (14 S. E. 8) that "a provision in a contract that all differences arising under it shall be submitted to arbitrators, thereafter to be chosen, will not prevent a party from maintaining a suit in the first instance in a court to enforce his rights under it." And this we regard as the law where the agreement goes no further; but in this case there was a further stipulation, providing that, in case of rejection, the agreement was to be canceled without damage to either party. The goods were rejected, and the plaintiff in error is the only party that could complain that they were not rejected by the award of arbitrators. The plaintiff in error, however, accepts the goods, finds no fault with their rejection, but insists that the residue of the contract shall be given effect, to wit, that the agreement be canceled without damage to either party. To this, we think, the plaintiff in error was entitled, and under the circumstances the defendant in error could sustain no suit to recover damages. In the case we are considering the question is not whether the submission to arbitration was a condition precedent to the right of action on the part of the buyer. It simply involved a proper construction of the contract under which the prunes were sold by the Cutting Fruit-Packing Company to the defendant in error, and by that contract no damages were to be recovered in the event the prunes were rejected. Baer's Sons Grocer Company bought the prunes with that express stipulation, and, after having rejected them by their own act, they are seeking to recover damages for lack of quality in a few sacks, when they have rejected the entire cargo, which, under the terms and provisions of the contract, they can not do.

The judgment was rendered on the 7th day of Jan-

nary, 1896, for three hundred dollars, with interest thereon from the 18th day of December, 1894, nearly two years anterior thereto; when it is provided by the Code, c. 131, s. 16, that "When there is a recovery on a bond conditioned for the payment of money, as well as in all cases where a judgment or decree ·is rendered or made for the payment of money, it shall be for the aggregate of principal and interest due at the date of the verdict if there be one, otherwise at the date of the judgment or decree, with interest thereon from such date, except in cases where it is otherwise provided." So in *Hawker* v. *Railroad Co.*, 15 W. Va. 629, this Court held that "in an action for damages the judgment should be for the amount assessed by the jury as damages, and interest on this amount from the day the judgment is actually rendered, and not from the first day of the term at which the judgment is rendered." So in *Murdock* v. *Insurance Co.*, 33 W. Va. 407 (10 S. E. 777) it was held error to make the sum found by the verdict bear interest from the date of the verdict, and not aggregate the interest to the date of the judgment.

It is also claimed that the plaintiff was damaged by reason of the prunes not being delivered in a reasonable time. It is apparent, however, that, if such failure existed, it was waived by the defendant in error, and was a matter subject to be arbitrated if the defendant in error had so desired.

For these reasons the judgment complained of must be reversed, with costs, and, the Court proceeding to give such judgment as should have been given, the plaintiff's suit is dismissed.