EGBERT v. ST. PAUL FIRE & MARINE INS. CO.

(District Court, S. D. New York. December 24, 1895.)

MARINE INSURANCE—TOWAGE POLICY—WARRANTIES.

A towage policy insured the owner of a tug against loss or damage which the tug "might become legally liable for from any accident caused by collision and for stranding." The policy also contained the following: "Warranted by the assured that the steam tug with her tow shall not go out of the usual and regular channels, and also warranted free from loss, damage, or expenses caused by or arising from so doing, or from ignorance on the part of the master or pilot as to any port or place the said steam tug may use, or from want of ordinary care or skill." *Held* that, as these warranties, if literally construed, would cover all the grounds upon which the tug could become liable to third parties, and would consequently not bind the insurer to any liability whatever, they should be construed as referring to the general qualifications of the master and pilot in respect to knowledge, care, and skill, and not as warranting against single acts of error, negligence, or mistake, and as warranting that the tug, in going from place to place, should go by way of the usual and regular channel; and that, consequently, they did not cover an instance in which, while going by the usual channel, the tug, through some error or negligence of her officers, went too near the shore for the draught of her tow, and stranded it on a rock.

This was a libel by Alice P. Egbert against the St. Paul Fire & Marine Insurance Company to recover indemnity on a towage policy.

Chas. M. Hough, for libelant.
Chas. C. Burlingham, for respondent.

BROWN, District Judge. The above libel was filed to recover indemnity upon a towage policy issued by the defendant company to A. W. Egbert, insuring him "against such loss or damage as the steam tug Samuel W. Morris might become legally liable for from any accident caused by collision and for stranding," as stated in the policy.

During the continuance of the policy the tug, on the 9th day of August, 1893, upon a trip from Brooklyn to Newark, with the canal boat J. B. Devine in tow alongside, ran the tow upon a rock in the Kill von Kull, at a point about 200 feet south from the Bergen Point lighthouse. For the loss thereby occasioned to the tow and her cargo the Morris was subsequently held liable upon the ground that the shore on the Bergen Point side was known to be rocky; that the tug proceeded too near the light and should have gone more to the southward where there was abundance of water. The S. W. Morris, 59 Fed. 616.

The rock on which the tow struck was a small one, projecting considerably above the bottom. This particular rock was not known to the pilot, though he was a competent person, of reasonable skill and knowledge. But the bottom there was known to be rocky; and it was, in fact, so rocky that when the sunken tow was raised chains could not be swept along under it. Boats of 7-feet draft, like the tow in this instance, should be taken about 300 feet from the light. Fishing vessels and others of small draft were, however, accustomed to go in this water, and even much nearer to the Bergen Point light. There was no buoy to mark the line of the rocky bottom, nor was there any defined channel way.

The risk and liability which the defendant company assumed is stated in the policy as follows:

"This insurance is to fully indemnify the assured for loss and damage arising from or growing out of any accident caused by collision, and for stranding, resulting from any cause whatever, to any other vessel or vessels, their freights and cargoes (or each or any of them) for which said steam tug or its owners may be legally liable. * * * It is expressly understood and agreed that this insurance does not in any way apply to or cover any risk or risks on the hull of the steam tug, nor on any other vessel, nor on any cargo or freight owned by the assured. * * * Should any loss or damage happen during the period insured as aforesaid this company shall not be liable, unless the liability of the said steam tug for such loss or damage is determined by a suit at law, or otherwise, as this company may elect. * * * Warranted by the assured, that the steam tug with her tow shall not go out of the usual and regular channels, and also warranted free from loss, damage or expenses caused by or arising from so doing, or from ignorance on the part of the master or pilot as to any port or place the said steam tug may use, or from want of ordinary care or skill."

The defense to the present libel is that the Morris violated the warranty last quoted, viz. that she should not go out of the usual and regular channels; and that the accident arose solely from the fact that she did go out of the proper channel for such craft as

she had in tow, and too near to the lighthouse over the rocky bot-tom, through want of ordinary care and skill.

I am of the opinion that this clause does not exempt the defend-ant from liability in the present case. The only object of this policy was to insure against negligence or mistake on the part of the officers or crew of the tug. The policy expressly excludes all insurance of the tug itself, or of any cargo, or freight owned by the assured. The policy is entitled "Tower's Liability." But the tug does not guaranty or insure anything to the tow, except reasonable knowledge, care and skill. Her liability is only for negligence or incompetency; and the latter, being within the control of the owner by providing a proper vessel and competent officers and crew, is expressly excluded from the policy by other clauses. The policy is in the common form of such policies, and they have come into general use. It is plain that their sole object, and the whole scope of their obligation, are to indemnify the owner against lia-bility to others arising through such negligence, miscalculation, or errors in navigation as are beyond the owner's power to foresee or prevent. To obtain this indemnity the owner pays a heavy pre-mium, which in this case amounted to 6 per cent. per annum upon the valuation of the tug. The conditions and the warranties of the policy must be construed, if possible, in harmony with its evident general purpose, and not so as to reduce the insurance practically to nothing.

If the warranty against loss arising from the "want of ordinary care and skill" be construed as referring to every particular act of navigation that may involve the tug in liability, then the policy for all practical uses might as well never have been written; be-cause nothing would be left for the policy to operate upon, since the tug can never be liable to others under the general terms of the policy, except for some act involving want of ordinary care and skill. It would never take effect at all, and be nothing but a snare and a fraud, which must be presumed to be contrary to the intent of both parties. In such a dilemma, if no other construction of this clause were possible, I think this condition should be treated as void, because wholly repugnant to the clear intent of the contract. 2 Pars. Cont. 26.

It is the duty of the court, therefore, to seek some other reason-able construction that the language may be capable of receiving, which will give effect to the evident general purpose of the con-tract. 2 Pars. Cont. 16–18. Such a construction is suggested by the clause preceding the one in question, which requires that the master and pilot shall have knowledge of the port, and warrants against loss from lack of it. And so the following clause as to "or-dinary care and skill" may fairly be construed as meaning that the master shall be a person possessing the necessary qualifications of ordinary care and skill; and that the assured warrants against loss arising from the want of those general qualifications, but not that the master and pilot shall never be remiss in a particular in-stance. Id. 12. Both clauses are to be construed as referring to

the general qualifications of the master and pilot as respects knowledge, care and skill, but not as warranting against single acts of possible error, negligence or mistake. The most intelligent and the most careful and skillful may at times be remiss; and it was this liability that the policy was designed to cover, provided the master and pilot were persons of knowledge, care and skill.

This construction is further supported by the fact that while the next two warranties provide for a duly licensed master and pilot, and that the tug shall be "well found in anchor cable, rigging, tackle and apparel," there is no other clause than the one in question which would warrant the actual possession by the master and pilot of the requisite character for knowledge, skill and judgment to insure prudent navigation.

In like manner the warranty "not to go out of the usual and regular channel" cannot be interpreted as a warranty that the tug shall never, through any fault or error of navigation, get out of the proper depth of water. The insurance against liability from stranding precludes any such construction, for there can never be stranding where there is plenty of water. What is meant by this clause is that in going from place to place the vessel shall go by way of the usual and regular channel, and shall not intentionally take any unusual channel or any route out of the usual course, but shall pursue the ordinary and accustomed route.

In the present case, the ordinary route and the usual channel were taken. But the channel had no defined limits. It was not buoyed. What was a fit distance from shore for vessels of one draft might be unfit and outside of the proper channel way for vessels of deeper draft. The Morris, with a tow drawing 7 feet, should have gone 50 or 100 feet more to the southward, in the deeper water; but in going 50 or 100 feet too near shore she did not go in any different channel, nor did she go "out of the usual channel" in the sense of this policy, for there was but one channel, and for vessels of a little lighter draft this channel was in common use much nearer shore than the Morris went.

In a word, the accident arose while the Morris was going by the usual channel; but through some miscalculation or inattention of the master, or through misunderstanding as to the exact draft of the tow, she got 50 or 100 feet too near shore, and so the tow stranded upon a projecting rock. This was precisely one of the risks which the policy was designed to cover.

Decree for the libelant, with costs.