## ROGERS v. AETNA INS. CO.

### SAME v. HOME INS. CO.

#### (District Court, S. D. New York. November 5, 1896.)

1. MARINE INSURANCE—INTOXICATION.
   Incompetency of the master is not established as a defense against a claim of loss on a marine policy by proof of a single instance of more or less intoxication, where previous good character and competency are established.

2. TOWERS POLICY—DATE OF LOSS—COMPUTATION OF TIME.
   On limitation of suit to one year from the date of the loss in an action on a "Towers policy" insuring against liability to other vessels for negligent collision, where the policy requires the establishment of the loss by suit in behalf of the other vessel, the time does not begin to run until the adjudication of liability for loss; to which 60 days required for submitting proofs is added. The requirement that "suit be prosecuted" is satisfied by a joint suit in which the liability can be lawfully adjudged; and this is not changed by the fact that the defendants require a severance; nor should time be computed during which the common attorney of insurers and insured is endeavoring to bring about a compromise of the claim with the concurrent action of each.

These were suits in admiralty by Robert Rogers against the Aetna Insurance Company and the Home Insurance Company upon policies of marine insurance.

Hyland & Zabriskie and C. M. Hough, for libellant.

Stewart & Macklin, for respondents.

BROWN, District Judge. In February, 1891, policies were issued by the above companies, covering what is known as "Tower's Liability" upon the harbor tugboat F. W. Devoe; that is, an agreement to indemnify the owner against any loss arising out of any accident caused by collision or stranding to any other vessel or vessels, or their cargoes, for which the tug or its owners may be legally liable. In June following, a yacht was run down by the tug and destroyed, and two lives were lost in the accident. Upon claims to damage being presented against the owner, he commenced proceedings in admiralty for the limitation of his liability upon a petition filed on June 30, 1891, wherein he denied any negligence on the part of the Devoe, and claimed that if negligence was found, his liability might be limited to the value of the tug. Answers were filed to the petition, the cause was heard, and a final decree made finding negligence in the tug, but without the privity of the owner, and directing that his liability be limited. The amount of the respective

claims was adjusted between the parties without further litigation, and on the 29th of June, 1892, a final decree fixing the liabilities and directing distribution was entered. The tug had been previously sold under the order of the court for $4,025, and that amount less the cost of the proceeding was distributed among the various claimants for damages through the collision, pursuant to the decree.

On the day following the collision, notice was given by the libellant to the defendant companies. Soon afterwards he was referred by the representatives of the Aetna Insurance Company to Carpenter & Mosher, who had generally acted as counsel for both the defendant companies in admiralty matters, and the limitation of liability proceedings were thenceforward conducted by them, with the knowledge of the companies' agents. In various conversations, however, it would seem that the representatives of both companies had expressed the opinion that nothing should be paid under these policies, because they alleged that the accident was brought about through the incompetency and drunkenness of the pilot who was in charge of the tug at the time of the accident.

After the ascertainment of the amount of the loss and the order of distribution on the 29th of June, 1892, Mr. Mosher, as the evidence indicates, had conversations from time to time with the representatives of the defendant companies with a view to procuring payment to the libellant. The absence of the Vice President of the Home Insurance Company in Europe seems to have prevented what Mr. Mosher regarded as any final decision in the matter until the return of the Vice President in the spring of 1893, when he must have understood that further efforts at an adjustment were useless. Carpenter & Mosher regarded themselves as acting for both parties in the previous litigation, and therefore considered it improper for them to assume the prosecution of any suit against the company upon the policies. They accordingly gave the papers in the case to the libellant on or about May 22, 1893. The libellant thereupon immediately went to his present proctors, who as soon as possible procured and served formal proofs of loss, on June 30, 1893. Thereupon the libellant was notified of the defendants' positive refusal to pay, and on July 7, 1893, a libel was consequently filed against both companies. On October 28th, exceptions were filed to the joinder of both defendants in one libel; and the exception being sustained, the libellant was allowed to discontinue as to the Home Insurance Company, and a separate libel against that company was thereafter filed on November 17, 1893.

In the answers the defences set up are:

(1) The drunkenness and incompetency of the pilot in charge.

(2) That the suit was not commenced "within twelve months after the loss."

(3) That the loss arose through "want of ordinary care and skill."

1. The terms of the present policy are the same as in the case of Egbert v. Insurance Co., recently adjudged in this court (71 Fed. 739); and the construction applied there must be applied here, as respects the "want of ordinary care and skill," and the requirement of a competent master and pilot. If the pilot was not a compe-

tent person of "ordinary care and skill," the defence should be sustained under that clause of the policy.

The pilot in charge in this case had been duly licensed. That is at least presumptive evidence of his competency. There is no evidence in the case showing any want of general qualifications, or that he was lacking in ordinary care and skill, except on this specific occasion. No complaints had ever before been made to the owners in regard to him. It is not shown that he was addicted to the use of liquor; his previous good habits are fully testified to. The owner had no notice, or any reason to suppose, that the pilot was not in every way qualified for his post. There was no want of ordinary care and skill on the part of the owner in selecting him; and there is no proof that he was not a man of ordinary judgment, care and skill. These facts cover the full scope that can be given to the clause as to "ordinary care and skill," and the defence on this head is not sustained.

2. The insurance in this case did not cover any direct damage to the tug herself, but only such liability to other vessels or cargo as the tug might be subjected to through collision or stranding. In cases, therefore, where any dispute arises as to who is to blame for the accident, it is impossible to determine whether there is any loss at all until that question has been adjudicated, and the amount of the loss ascertained. These policies, moreover, expressly provided that the company "shall not be liable unless the liability of the tug for the loss or damage is determined by a suit at law, or otherwise as the company may elect." Another clause provides that all claims under the policy shall be void "unless prosecuted within twelve months from the date of the loss." Unless, therefore, the company elect to admit the fact of loss, a suit is necessary to settle that preliminary question; and under these policies the "date of the loss" can only be the date when the company admits the fact of loss, or when it is judicially determined, which in this case was June 22, 1893, to which, within the adjudications, is to be added 60 days for proofs of loss, which would bring the suit against the Aetna Company within the time limit. The joint suit against the Aetna and Home Companies, begun on July 9, 1893, though subject to legal exception, if the defendants chose to avail themselves of the exception, was, in my opinion, sufficient to satisfy the demands of the policies; for thereby "the claim was prosecuted by suit" as required. The suit showed the determination of the libellant to prosecute his claim, and this answered all the reasonable purposes of the clause in question. The exceptionable joinder was not harmful to either company; the suit could have gone on without practical inconvenience to either company, and at a saving in costs, had no exception been taken to the joinder. Insurance Co. v. Boykin, 12 Wall. 433. The Home Company, however, excepted to the joinder as it had a right to do, and the exception being technically valid, was allowed. Had this exception been taken promptly, the new libel would naturally have been filed before the expiration of the 60 days. But though the first libel was filed and process served on the 7th of July, the exception was not served until the 28th of October, after the 60 days had expired. The

libellant, within three days, moved to amend, which was brought to a speedy hearing, and the new libel was filed against the Home Insurance Company on the 21st of November, 1893. The warranty of the policy is, I think, satisfied by the commencement and prosecution of a suit in good faith against the company. The clause is not a warranty against any mistake in practice. In substance, the present suit is a mere continuation of the former; and there is no substantial reason for making any distinction as respects the liability of the two companies.

Independently of the above considerations, however, the defendants ought to be deemed estopped from computing any time against the libellant during which negotiations were pending and expectations of a compromise held out by the defendants. Steel v. Insurance Co., 2 C. C. A. 463, 51 Fed. 715. I regard it as certain, both from Mr. Carpenter's testimony, and from other circumstances in proof, that the proceedings for limitation of liability were regarded as prosecuted in the interest of the insurance companies as well as of the libellant. That suit tended directly to diminish the amount of the claim that could be made under the policy. The agents of the Aetna Company recommended the libellant to go to Carpenter & Mosher, and in that proceeding I regard them, in fact, as representing both interests. The decree in limitation of liability was for an amount considerably less than the amount insured by the policies.

The proofs on this subject are not complete, owing to the death of Mr. Mosher, since these transactions. He had the principal management of the business, and it was not until May, 1893, that he told Mr. Rogers that suit would have to be commenced against the companies. From Mr. Mosher's known character for promptness, energy, and faithfulness in the service of his clients, I cannot believe that a definite answer to Mr. Rogers' repeated inquiries would have been so long postponed had not the subject been kept until then under advisement in the conferences between the representatives of the company and Carpenter & Mosher as their counsel.

When it is determined, as I must find, under the proofs and the proper construction of the policies, that the charges of incompetency or drunkenness of the pilot are not sustained as a legal defence, there is no longer any equity in the position taken by the companies. This was originally their only suggestion of a defence; and their relations to Carpenter & Mosher in all the proceedings seem to me to have been such as to preclude them from raising any question as to the lapse of time.

The libellant is, therefore, entitled to decrees, with costs.