ROGERS v. ÆTNA INS. CO. OF HARTFORD.

(Circuit Court of Appeals, Second Circuit. May 25, 1899.)

No. 145.

1. INSURANCE—CONSTRUCTION OF CONTRACT.

It is no defense to a contract of insurance that the loss occurred through the negligence of the assured or of his servants, unless the contract expressly constitutes such negligence a defense.

2. SAME.

An insurance policy will not be given a construction which would defeat the entire purpose of the contract by enabling the insurer to defeat any recovery thereon.

3. SAME—MARINE INSURANCE —AGAINST LIABILITY FOR COLLISION.

A policy insured the owner of a steam tug against such loss or damage as the tug might "become legally liable for from accident caused by collision." It contained a provision that the insured warranted that the tug, with her tow, should not go out of the regular or usual channels, "and also warranted free from loss, damages, or expense caused by or arising from so doing, or from ignorance on the part of the master and pilot as to any port or place the steam tug may use, or from want of ordinary care or skill." Held, that the expression "from want of ordinary care or skill" would not be construed to apply to the contract generally, which would render it nugatory, but only to the preceding provision as to the action of the master or pilot in going to any port or place the tug might use.

4. SAME—LIMITING TIME FOR SUIT.

A policy insuring a steam tug against liability for loss or damage arising from collision provided that suit thereon must be brought within a year after the date of the loss. It also provided that the insured should not be liable, unless the liability of the tug should be established by suit, and that losses should be payable 60 days after proofs of such loss or damage and of the amount thereof. Held, that such provisions must be construed together, and that, so construed, proofs of loss could not be made until

after a judicial determination of the liability of the vessel, and the limitation commenced to run 60 days after such proofs were furnished, unless they were waived.

Appeal from the District Court of the United States for the Southern District of New York.

Le Roy S. Gove, for appellant.

Nelson Zabriskie, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge.   June 14, 1891, near midnight, a collision occurred between the libelant's steam tug F. W. Devoe and the yacht Ameila in the North river, and as a result the yacht sank and two of the persons on board of her were drowned.   The Ætna Insurance Company had, by its policy dated February 12, 1891, insured the libelant "and others on account of whom it may concern, loss payable to him or order" in the sum of $2,500, against such loss or damage as the steam tug might "become legally liable for from accident caused by collision."   That policy was in force at the time.   Prompt notice of the disaster was duly given by the libelant to the insurance company pursuant to the terms of the policy.   Within a week or 10 days thereafter the libelant instituted proceedings in rem in the district court of the United States for the Southern district of New York for the limitation of his liability as owner of the steam tug.   In that suit the owners of the yacht, as well as other persons having claims arising from the collision, were served with process and appeared, and the question of the responsibility of the tug was litigated; and it was adjudged that the libelant was liable for the collision and the damages and injury arising therefrom to the extent of his interest in the vessel, and the damages sustained by the owner of the yacht and the other claimants were agreed upon between the parties, and the vessel was sold and the proceeds distributed pro rata among those entitled thereto.   In this proceeding the libelant employed as his attorneys a law firm who had been accustomed to represent the insurance company in its litigations.   They undoubtedly supposed that they were representing its interests as well as those of the libelant in the proceeding.   At the termination of the proceeding, however, the insurance company repudiated any connection with the proceeding and all liability for the loss, and on June 3, 1893, proofs of loss were served on the company by the libelant.   In the following month he filed the libel in the present cause to recover the loss insured by the policy.   The insurance company alleged as defenses that the master or pilot in command and charge of the tug at the time of the collision was incompetent and unfit to navigate her, and was intoxicated at the time and when she started on the voyage upon which the collision occurred; that the damages and injuries which resulted from the collision arose on the part of the steam tug, her owner, master, or pilot, and the persons in charge of her navigation, from a want of ordinary care; that the policy of insurance provided that all claims thereunder should be void, unless prosecuted within 12 months from the date of the loss, and, the libelant not having prosecuted said

alleged claim within said 12 months, the policy and all claims under it were void; that the alleged proofs of loss claimed to have been furnished by the libelant were not in proper form, nor such proofs as the company was entitled to have from the libelant; and that, if at the time the policy was issued the libelant was owner of the tug, it never took effect, inasmuch as it was issued to him "and others as owners of the said steam tug." The court below decreed in favor of the libelant.

An examination of the record of this appeal discloses a meritorious demand against an insurance company, and defenses by the company which are not creditable to the sense of justice of its officers. The proofs show that the tug was in command of a duly-licensed master. Her navigation at the time was in charge of the mate, one Walch, who was a duly-licensed pilot. Walch had taken the wheel when the tug started on the voyage, the master being with him at the pilot house at the time. He had just come aboard, and was undoubtedly under the influence of liquor, but not sufficiently to attract the notice of the master. It required skillful management to take the tug out, the exit from her slip being obstructed by a tow of ice barges. After Walch had accomplished this, the master went off duty to sleep. The collision occurred within half an hour later, and was caused by the gross carelessness of Walch, who by that time was so intoxicated as to be incapable of performing his duties properly. There is no evidence that either the master or the pilot was incompetent or unskillful in their vocation, or were not in good repute, and none to impute any fault or remissness to the libelant in employing either of them. It is no defense to a contract of insurance that the loss occurred through the negligence of the assured, or of his servants, unless the contract expressly constitutes such negligence a defense. One of the principal objects which the assured has in view in effecting an insurance is protection against casualties accruing from these causes. Ang. Ins. § 125. The policy contains a warranty that the tug "shall at all times be in charge of and commanded by a duly-licensed pilot or captain." It contains also the following:

"Warranted by the assured that the said steam tug, with her tow, shall not go out of the regular and usual channels, and also warranted free from loss, damages, or expense caused by or arising from so doing, or from ignorance on the part of the master and pilot as to any port or place the steam tug may use, or from want of ordinary care or skill."

It is insisted by the insurance company that there was a breach of the warranty against loss arising "from want of ordinary care and skill." The collision undoubtedly occurred through want of ordinary care or skill, and, if it is the meaning of the policy that the insurance company shall not be liable in any such case, the proofs establish a defense. But this warranty is found in a contract which has no other purpose than to indemnify the assured against the loss which he may sustain through the improper navigation of his own vessel, and, as such a loss cannot arise in any other way or from any other cause than the want of skill or care of those in charge, the contract would be of no value to him, and would be nugatory as to the insurance company, if the warranty is given the effect claimed for it. It was

probably inserted where it is found with the purpose, on the part of the Ætna Insurance Company, of escaping any liability in the event of a loss, if it should see fit to do so. But it is inserted in a part of the policy where it would not naturally convey that meaning to the assured. It is made part of a comprehensive warranty expressed to exonerate the insurance company against the risks that may intervene, if the tug, with her tow, is taken out of the regular towing channels, or to any port or place where the master or pilot, through ignorance or inexperience, ought not to undertake her navigation. Upon no rule of construction can it be permitted to extend to defeat the whole end and aim of the contract. It must be given an interpretation most favorable to the assured. We construe it as though it read "warranted free from loss arising from ignorance or want of ordinary skill or care on the part of the master or pilot as to any port or place the steam tug may use." The defense that the suit was not brought within the time limited by the policy is founded upon a provision "that all claims under this policy shall be void, unless prosecuted by suit at law within twelve months after the date of the loss, any statute of limitation to the contrary notwithstanding." The policy also contains a provision that the company shall not be liable for any loss or damage, "unless the liability of the said steam tug for such loss or damage is determined by a suit at law, or otherwise, as this company may elect." It contains another provision that "losses shall be payable sixty days after proofs of such loss or damage and of the amount thereof." It contains no provision requiring the proofs of loss to be presented within any specified period. The condition requiring suit to be brought within one year must, of course, be read with the other conditions, and it is to be so construed, if possible, as to render all of them consistent and harmonious. By one of them no cause of action can arise under the policy until the assured has established, by legal proceedings, the liability of his vessel for the damage caused by the collision. This he might be unable to do within a year, as in the ordinary course of legal proceedings, prosecuted with due promptness and vigor, it is frequently impossible for a party to procure an adjudication in a litigated controversy within that period. Does the policy mean that, in the event he is unable to do so, the assured is to bear the loss, and the company is not to be liable at all? It can only be given this meaning that it was devised by the company as a trap for the unwary, for no sane man would understandingly accept such a policy. Common sense and common decency forbid a construction which would permit the limitation to be operative during the period before the cause of action arises. In Hay v. Insurance Co., Chief Judge Church, in considering a similar condition, observed that it seemed "absurd to suppose that the parties intended to fix a limitation of time for bringing an action, so that by compliance with other conditions of the policy the whole time might elapse, and thus result in depriving the party of the right to bring any action." 77 N. Y. 243. Statutes limiting the time of commencing action never receive such a construction. We have no doubt that the limitation applies to a loss that has been judicially determined, and begins to run from the date of the determination. After the

cause of action thus arises, the other condition of the policy becomes operative, and, unless proofs of loss have been waived, an action upon the policy cannot be brought until 60 days after proofs of the amount of loss are served. Then, and not until then, the limitation begins to run. Steen v. Insurance Co., 89 N. Y. 315; Spare v. Insurance Co., 17 Fed. 568; Friezen v. Insurance Co. 30 Fed. 352; Steel v. Insurance Co., 51 Fed. 715, 2 C. C. A. 463. The present suit was brought before 60 days had expired after service of the proofs of loss, and the proofs were served within a year from the date of the final decree in the proceeding to limit liability. No objection has been taken by the appellant that the suit was prematurely brought, probably for the reason that when the proofs were served it peremptorily refused to pay the loss. The decree entered in the limited liability proceeding March 29, 1892, was interlocutory merely (McGourkey v. Railway Co., 146 U. S. 537, 13 Sup. Ct. 170), was subject to revision, and did not conclude any of the parties as to the liability of the tug for the damages arising from the collision. The determination contemplated by the condition of the policy is a final adjudication. Anything short of that could not subserve any useful purpose. It follows that the suit was brought within the time limited by the condition. The defense that sufficient proofs of loss were not furnished by the libelant has not been urged in this court. Of course, by disclaiming all liability under the policy, the company waived any objection to the sufficiency of the proofs. Insurance Co. v. Pendleton, 112 U. S. 696–709, 5 Sup. Ct. 314. The defense that the policy never attached, because it runs to the libelant "and others on account of whom it may concern," is too frivolous to require discussion.

We have thus considered all the questions which have been presented by the appeal, except those which relate to the amount of the recovery awarded the libelant. It is unnecessary to discuss these in detail, because, upon the proofs, it satisfactorily appears that the libelant was entitled to a larger recovery than was awarded to him by the decree. The policy provides that "all losses shall be paid in such proportion as the amount insured bears to the value of the said steam tug, as expressed in this policy." By the policy the tug was valued at $5,000. The policy also provides that "in all cases of loss $100 shall be deducted therefrom," and also that the liability of the company "for loss and damage to vessel or vessels is to be limited to the amount of actual repairs rendered necessary in consequence of any disaster insured against." By the collision the yacht was practically destroyed. Her value at the time was from $3,500 to $4,000. She sank in over 50 feet of water, it cost $420 to raise her and get her ashore, and the owner sold her to a boat builder for $100. The latter did not attempt to repair her, obviously because she was not worth repairing. The testimony introduced by the insurance company that she could have been repaired for a practically trifling sum is worthless. The damages to the yacht caused by the collision, and for which the tug was liable, were, at a moderate estimate, $3,500. Deducting from this sum $100, as required by the policy, the amount which the libelant was entitled to demand of the insurance company by the terms of the policy was $1,700. The decree of the court be-

low proceeded upon the theory that the libelant was entitled to recover the proceeds of the sale of the tug in the limited liability proceeding, less those distributed pro rata upon the claims against the tug, other than those of the owner of the yacht, together with the reasonable expenses of the proceeding. The policy does not limit the loss of the assured to the amount established in favor of the injured vessel in a suit for damages, or in a limited liability proceeding. It does, in effect, require him to establish the liability of his vessel as the responsible author of the loss or damage before he can call upon the insurance company to pay. This it is in his power to do. If a suit is not brought by the owner of the injured vessel, he can bring a suit himself which he knows will fail, except as it will result in an adjudication of the responsibility of his own vessel for the disaster. But it would never be in his power to obtain a judicial determination of the amount of the liability, except the disaster should be so extensive as to justify him in surrendering his vessel in limitation of his liability. The policy is designed as an indemnity extending to all collisions, not merely to those which are so disastrous as to permit the assured to obtain a determination of the amount of the loss. The clause requiring a determination by suit at law of the liability of his vessel for the loss or damage is not to be construed as requiring him to establish the amount, or to do more than obtain a determination that his vessel is legally responsible for the disaster. If the amount is judicially determined, the insurance company, not being a party to the suit or proceeding, is not concluded thereby; and, if the company is not concluded, there is no reason why the assured should be. Whether in the event of a suit being brought against the assured by the owner of the injured vessel, and notice being given by the assured to the company to defend, the latter would be concluded by the recovery, is a question which does not arise. As the libelant has not appealed, this court has no power to increase the amount of his recovery. In any view of the case, he was entitled to recover the amount awarded by the court below. The decree is accordingly affirmed, with interest and costs.

LACOMBE, Circuit Judge. I concur in the conclusion that the decrees in this case and in the case of Rogers v. Home Ins. Co., 95 Fed. 109, should be affirmed. The company contracted to respond only for "such loss or damage as the tug may become legally liable for," and has stipulated that "the liability of the tug for such loss or damage [shall be] determined by a suit at law, or otherwise, as this company may elect." The companies in these cases did not elect to reimburse without requiring the assured to stand suit; and I am therefore of the opinion that the "loss" insured against is the sum fixed by such suit at law as the damage for which the tug became liable,—a loss which was not incurred until the amounts payable to the injured parties were finally determined by suit,—and am further of the opinion that, by requiring the assured to have such loss fixed by a suit against him (instead of themselves adjusting it with him as the policies provided that they might elect to do), they have estopped themselves from questioning the amount thus fixed, or the costs in-

curred in defending, except, perhaps, when some bad faith or improvidence is apparently shown. As to the limitation in the policy of time for bringing suit, I am in entire accord with the interpretation given to similar clauses in Fullam v. Insurance Co., 7 Gray, 61, and with the dissenting opinion of McKenna, Circuit Judge, in Steel v. Insurance Co., 2 C. C. A. 463, 51 Fed. 715, but, being satisfied that the weight of authority is the other way, vote for affirmance.