LUCKENBACH et al. v. HOME INS. CO. OF CITY OF NEW YORK.

SAME v. UNITED STATES FIRE INS. CO. OF CITY OF NEW YORK.

(District Court, S. D. New York. December 16, 1905.)

INSURANCE—ACTION ON MARINE POLICY—LIMITATION BY TERMS OF POLICY.

In a marine insurance policy, insuring a tug against liability for injuries to tows or other vessels, a provision that no suit or action should be maintained thereon unless commenced within 12 months next after the disaster causing the loss should occur, and that, should any suit or action be commenced after the expiration of said 12 months, the lapse of time should be taken as conclusive evidence against the validity of the claim, is valid and enforceable, and its effect is not avoided by the fact that a suit was necessary to determine the legal liability of the tug for an injury to a tow, where the commencement of such suit was controlled by the insured and there was unnecessary and unreasonable delay in its commencement and prosecution, so that a suit on the policy was not instituted until more than five years after the loss occurred.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 1544, 1545.]

In Admiralty. Actions on policies of marine insurance.

Peter S. Carter, for libellants.
James J. Macklin, for respondents.

ADAMS, District Judge. These actions were brought by Edgar F. Luckenbach, Harry Williamson, Edward Luckenbach and Lewis Luckenbach against the Home Insurance Company of the City of New York and the United States Fire Insurance Company of the City of New York, to recover alleged losses under a yearly policy of the former, dated November 11th, 1898, with a rider attached dated November 16th, 1898, and under a yearly policy of the latter dated November 7th, 1898, with a similar rider attached. The libellants owned the tug L. Luckenbach, covered by the policies and Towers' liability riders. The libellants, or a part of them, also owned the barge Nancy Pendleton. While the latter was being towed by the tug from Newport, Rhode Island, to Boston, on or about the 28th day of March, 1899, she struck the bottom several times, about half way between Shovelful Lightship and Pollock Rip Lightship, causing damage to her.

The libellants claim that they are entitled to recover by reason of the following provisions of the contract:

"And it is further agreed that if the Vessel hereby insured, or her tow, shall come into collision with any other vessel, craft or structures, floating or otherwise, or shall strand or ground such other vessel or craft, and the assured shall in consequence thereof become liable to pay, and shall pay by way of damages to any other person or persons any sum or sums not exceed-

ing in respect of any one such collision the value of the Vessel hereby insured, we, the assurers, will pay the assured such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the Vessel hereby insured. And in cases where the liability of the Vessel has been contested, with the consent, in writing, of a majority of the underwriters on the hull and—or machinery (in amount) we will also pay a like proportion of the costs thereby incurred or paid ; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of Cross Liabilities as if the owners of each vessel had been compelled to pay to the owners of the other of such vessel such one-half or other proportion of the latter's dam-· ages as may have been properly allowed in ascertaining the balance or sum payable by or to the assured in consequence of such collision ; and it is further agreed that the principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners. It is hereby further agreed that this policy shall also extend to and cover the said vessel's legal liability for any collision and—or grounding and—or stranding which may occur to any vessel or vessels or craft while in tow of said vessel, subject to all the terms and conditions of this clause."

The libel alleges as follows:

"Seventh. That on or about the 6th day of November, 1899, Proofs of Loss on behalf of the libelants of the damages which the barge 'Nancy Pendleton' sustained while in tow of the libelants' said steam tug were presented to the Home Insurance Company, the respondent, and payment refused for the reason that no proof of legal liability of the said tug for the damages which the said barge had sustained were shown to be the fault of the said steamtug, and that said Home Insurance Company would not pay until the insured (the libelants herein) would submit proofs of such liability.

"Eighth. That on or about the 16th day of March, 1900, the owners of the barge 'Nancy Pendleton' filed a libel against the said steamtug in the U. S. District Court for the Eastern District of New York, to recover the damages sustained ·by said barge. That notice was given to said Home Insurance Company, the respondent, by the libelants that the said libel was filed against said steamtug, requesting said respondent to appear and defend said suit, which they refused to do. That the libelants then and there appeared in said suit for said tug in said Court and a claim duly made thereto, and said suit was defended by part of the owners of said tug and the libelants, and after a trial of the case on the merits the Court decided that the said steamtug was at fault and liable for the injuries which said barge sustained, caused by the grounding of said barge while in tow of said steamtug.

"Ninth. That thereafter an Interlocutory Decree was entered referring the damages to a commissioner to ascertain, and a Final Decree was entered, on the report of the commissioner, against said steamtug, awarding to the barge the sum of $2612.77, the amount of the damages and costs which the owners of the barge sustained. That in addition to the amount above specified your libelants became liable for and had to pay out for counsel fees and disbursements in defending said suit the sum of $125.00, making a total of $2737.77.

"Tenth. That on or about the 22nd day of October, 1903, the libelants paid the sum of $2612.77 to the owners of said barge 'Nancy Pendleton' the amount of the said Final Decree and the further sum of $125 as counsel fees and disbursements for defending said suit.

"Eleventh. That by reason of the premises the libelants have sustained loss or damages within the terms and conditions and perils insured against under the Policy hereinbefore referred to in said amount of $2737.77.

"Twelfth. The said libelants allege: That under the terms and conditions of the said Policy the respondent's apportionment on the insured value of $22,-500, on the total amount of $2737.77, valued at $30,000 pay the sum of $2053.33 less their proportion of $200 particular average which amounts to $150 and which said amount deducted from said $2053.33 leaves a balance of $1903.33, being the amount of the loss or damages sustained by the libelants under the Policy hereinbefore mentioned and the amount which the respondent is liable to the libelants for."

Similar averments are made in each case excepting as to the amounts of recovery claimed, that in the United States Company being $211.48 instead of the sum stated in the above 12th paragraph of the Home Company.

The answer after making some admissions and denials, in conformity with the following, states:

"Seventeenth. And for further answer to said libel respondent alleges: That the cause of the damage alleged in said libel, or for which the claim was made, the respondent is not liable for under the terms and conditions of the Policy of Insurance issued by it. That said barge at the time of the happening of the occurrence set forth in said libel, was owned partly or in whole by the same parties that owned and operated the said tug at the time of the occurrence therein set forth. Respondent alleges therefore that it is in no way liable for said damage. It also alleges that said libilants owning the said barge could not legally or properly proceed against their own property, to wit, the steamtug mentioned in said libel that had said barges in tow; and it also avers that under the terms of the said policy if the said libelants had any claim under the said policy mentioned in said libel against the respondent, the same should have been enforced against it by the said libelants within 12 months from the time of the said disaster which the said libelants failed to do. Respondent further avers that even if the said vessel was damaged it was not liable under the terms of the said policy for the same; and it also avers that it discountenanced and disapproved the suggestion of establishing or trying to establish a so-called legal liability in the manner instituted and prosecuted by the said libelants."

The questions presented for determination are: (1) were the proofs of loss duly made and (2) were the actions brought in season.

It appears that the adjusters for the libellants made a statement of the losses, covering another company as well as these, in which the facts of the loss were stated, also the adjustment between the various insurance companies. This was served upon the respondents, who in a letter to the said adjusters, signed by their own adjuster, dated December 4, 1899, referring to a number of losses said:

"Referring to the statements purporting to be proofs of loss in the following cases, i. e., * * * Tug 'L. Luckenbach' damage to Bge., N. Pendleton in tow on Mar. 28/99, * * * we have to say that we cannot accept these statements as proof of the 'legal liability' of these tugs for the damages sustained by their tows, and we must ask you to submit the proofs of such liability, if any exists."

In a subsequent letter, dated January 9th, 1900, the same adjuster for the insurance companies said:

"Referring to the claims made for loss and the statements submitted to us in the following named case, i. e., * * * Tug 'L. Luckenbach' damage to Bge. 'N. Pendleton' in tow on Mar. 28/99, * * * we have to say that nowhere in any of the papers submitted to us do we find anything whatever to prove the 'legal liability' of the tugs mentioned for the damages sustained by the various case of 'grounding &/or stranding' therein described, and in the absence of such proofs we cannot admit any liability under the policies for the amounts claimed."

The testimony shows that there were numerous conversations between the adjusters about these claims, probably before these letters were written, and nothing was said about lack of notice, all the conversations being about the legal liability for a loss paid by a party to himself. I conclude that the respondents were sufficiently advised about the loss to comply with any duty devolving upon the libellants, with

142 F.—65

respect to notice. Subsequently, October 22, 1903, formal proofs of loss were served. This was after legal proceedings had been taken to establish a liability upon the tug for the injury to the barge which is described in the libel above.

The policy, however, provided:

"It is furthermore hereby expressly provided and mutually agreed, that no suit or action against this Company, for the recovery of any claim by virtue of this Policy, shall be sustainable in any Court of Law or Chancery, unless such suit or action shall be commenced within twelve months next after the disaster causing the loss shall occur; and should any suit or action be commenced against this Company after the expiration of the aforesaid twelve months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

This is a valid provision, which, in substance, has frequently been sustained by the courts. Cray v. Hartford Fire Ins. Co., 1 Blatchf. 280, Fed. Cas. No. 3,375; Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386, 19 L. Ed. 257; Steen v. Niagara Fire Insurance Co., 89 N. Y. 315, 42 Am. Rep. 297. This loss occurred in 1899 and no actions were brought until these were, the 31st day of March, 1904. No reason appears here why the stipulation, requiring actions to be brought within 12 months or otherwise the claims regarded as invalid, should not be enforced. The case is distinguishable from Rogers v. Ætna Ins. Co. of Hartford, 95 Fed. 103, 35 C. C. A. 396, and Rogers v. Home Ins. Co. of New York, 95 Fed. 109, 35 C. C. A. 402, where actions, sufficient to preserve the liabilities, were actually commenced within the year.

Great stress is laid by the libellants upon the fact that it became necessary for them to resort to the courts to establish a legal liability, and that for such purpose they sought the forum of the District Court of the United States for the Eastern District of New York. Even if such a proceeding were necessary, no reason is shown why there should have been so much time lost in invoking the remedy, and apparently no legal reason existed excusing the delay.

The libels are dismissed.