**TUBIZE CHATILLON CORPORATION v. WHITE TRANSP. CO. et al.**

Equity No. 2303.

District Court, D. Maryland.

May 16, 1935.

John H. Skeen (of Emory, Beeuwkes, Skeen & Oppenheimer), of Baltimore, Md., for plaintiff.

Francis Key Murray, of Baltimore, Md., for receiver.

Roszel C. Thomsen, of Baltimore, Md., for Employers" Fire Ins. Co.

CHESNUT, District Judge.

This suit in equity is an aftermath of the suit at law in this court of Tubize Chatillon Corporation v. White Transportation Co., 6 F. Supp. 15. In the latter case the plaintiff (also the plaintiff here) on February 14, 1934, recovered a final judgment of $9,193.73 against the White Transportation Company, for the loss in transit

of certain merchandise delivered by the plaintiff as shipper to the Transportation Company, which was a common carrier of merchandise by motor truck. Shortly thereafter, on May 21, 1934, a receiver in equity was appointed by this court for the Transportation Company, the judgment not having been paid.

The plaintiff's merchandise was stolen in transit on or about April 20, 1932, at which time there was in force a contract of insurance between the defendant, the Employers' Fire Insurance Company, and the White Transportation Company, covering, according to the terms of the policy, liability of the Transportation Company as a common carrier for *certain* losses to merchandise as specified in the policy. Claim was made by the Transportation Company on the insurer on account of the loss but the latter denied liability. It does not appear from the bill of complaint that suit was brought on the policy either by the Transportation Company or its receiver; but the plaintiff, as owner of the said lost merchandise, has now brought this suit in equity against the Transportation Company and its receiver, and also against the insurer. The latter being a Massachusetts corporation, first appeared specially, objecting to the venue jurisdiction of this court but later withdrew that objection and has now filed a motion to dismiss the suit based on a number of separately stated grounds, the most important of which are as follows: (1) That the plaintiff had no such relation to the insurance policy as justifies it in maintaining the suit against the insurer; (2) that the suit is barred by the special contract period of limitations of one year after the loss, contained in the policy; and (3) that the policy does not cover the particular loss. It will be convenient to consider these defenses in their inverse order.

1. *Construction of the policy:* The policy is described as a "motor truck merchandise floater—truckmen's form." It seems to be a novel form of policy adapted to the nature of a comparatively new form of transportation, long distance carriage of merchandise by motor truck. The whole policy contract consists of three separate parts of which (1) the first is the main insurance contract which is followed (2) by certain printed conditions and (3) was modified from time to time by numerous separate endorsements added thereto. The various clauses and conditions of the pol-

icy seem to have been adopted in part from the ordinary standard fire policy and in part from the marine policy and in part from what is generally referred to as a liability policy. Counsel are not in agreement as to whether (1) the policy should be treated as insurance against actual loss to the insured or merely *liability* of the insured for loss and (2) whether the policy including a particular endorsement, covers the loss of plaintiff's merchandise in this case, or not; and (3) whether the suit now brought is barred by the special contract period of limitations, or not. They are also in disagreement as to whether the applicable law under the circumstances stated permits or precludes a suit on the policy at law or in equity by the plaintiff. The solution of these several questions depends very largely upon the proper construction to be placed on the policy contract as a whole, and the novelty of its form requires some detailed analysis of its provisions.

The main policy contract follows somewhat the general form of the well-known standard fire insurance policy and is perhaps most like such a policy issued to a bailee to cover the latter's legal liability for property entrusted to its care. Compare Eberhard v. Ætna Ins. Co., 134 Misc. 386, 235 N. Y. S. 445. The policy, however, also contains certain provisions or conditions which are somewhat similar to but not identical with provisions in a so-called "liability" policy, as typified by the automobile liability policy. It has also borrowed some provisions from the general marine policy although the latter are not important in the particular case. It is quite clear that the contract in the policy as originally written did not cover this particular loss, but it is contended that the original coverage of the policy was modified and extended by an endorsement dated February 29, 1932, in such a way as to cover the loss. The effect of the endorsement in this respect depends upon its construction which I think must be determined from a consideration of the original policy as a whole in the light of certain parol testimony which was given in the law suit by the plaintiff against the Transportation Company and which affords some explanation as to the making of the endorsement in question. The bill of complaint adopts by reference the pleadings and testimony in the law suit.

Taking up now the form, structure and main provisions of the policy, we find that

the Employers' Fire Insurance Company insures the White Transportation Company for the term of one year from August 13, 1931, to an amount not exceeding $72,000, "as respects goods and/or merchandise covered by this policy as against loss by reason of the perils specifically insured against, resulting from the liability imposed against the insured by law as a carrier and/or bailee and/or warehouseman under tariff and/or bill of lading and/or shipping receipt issued by the assured." As to coverage, it is provided that the policy covers general merchandise "while loaded for shipment on and/or in transit in or on the following described motor truck and/or trucks owned and operated by the assured within the limits of the United States and Canada." The perils resulting in loss or damage which are insured against are specified as fire, collision, overturning of motor trucks, certain perils of the sea, etc.; but not including loss by *theft*. The policy expressly excludes liability for loss of certain classes of property and loss from certain causes such as those due to neglect of the assured or due to rough handling or poor packing, leakage, etc., or by delay or water damage or breakage. None of these excepted perils are in point in this case.

Among the conditions that must here be considered are the following. In the event of loss or damage, the assured was required to give immediate notice thereof in writing to the Company; and failure to file sworn proof of loss within ninety days from the date of loss invalidated the claim. It was provided that loss was to be paid within thirty days after the presentation and acceptance of proofs of interest and loss. And "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the assured shall have fully complied with all the requirements of this policy, nor unless commenced within twelve months next after the happening of the loss." All these provisions are closely similar to the conditions of the standard fire policy. The policy also contained the following provision with regard to payment of loss: "The assured whenever requested shall aid in securing information and evidence and the attendance of witnesses and shall defend any action at law or in equity through such counsel as this company may direct, but at this company's expense, the company reserving the right however, to negotiate direct with the owner or owners or other claimants and any payment made to such c ner or claimants of the amount agreed upon between them and this Company shall constitute settlement in full of any and all claims of the Assured against this Company with respect to the property insured. This Company also reserves the right to settle any claim or suit at its own cost at any time." This clause is kindred to but not the same as somewhat similar clauses in liability policies. It will be noted that the obligation on the assured to defend suits for claims is not absolute but only if so requested by the insurer. In the instant case there was no such request, and the insurer denied liability, apparently promptly. Analyzing the coverage of the policy we find that it is against "(1) liability imposed upon the Assured by law as a carrier; (2) by reason of certain perils specifically insured against, not including theft, (3) for merchandise while loaded for shipment or in transit in certain motor trucks owned and operated by the Assured."

It appeared from the law suit in which the plaintiff recovered judgment against the Motor Truck Company that the plaintiff's merchandise was stolen, not while contained in a truck owned or operated by the assured (or by a connecting carrier), but while situated on a loading platform in Philadelphia, Pennsylvania, after carriage by the assured's trucks from Richmond, Virginia, to Philadelphia and there delivered at the loading station to a connecting carrier for completion of the carriage to destination at Bethlehem, Pennsylvania; and, as already stated, the policy as originally written by virtue of the provisions above recited, would not have covered the particular loss. Reliance is, however, placed on a subsequent endorsement which reads as follows: "It is hereby understood and agreed that this Company's liability shall be increased to not exceeding $20,000 on merchandise on any truck transporting merchandise for the Tubize Chatillon Corporation, superseding the limit granted on endorsement dated February 15th, 1932. This policy is also extended to cover the Assured's legal liability for merchandise as defined above until such merchandise has reached its declared destination whether transported on the Assured's trucks or not. It is a condition of this agreement, however, that right of subrogation against any party who may come into possession of such merchandise shall not be waived by

the Assured. All other terms, conditions and warranties remaining unchanged."

It appeared from the testimony in the suit at law that the occasion for this endorsement on the policy arose in the following way. The Transportation Company solicited business from the Tubize Company and in the negotiations relating thereto it developed that the shipments of merchandise from the Hopewell, Virginia, plant of the Tubize Company would be carried by another truck line from Hopewell to Richmond and there transferred to trucks of the White Transportation Company and generally transported in trucks of the White Company to points in Pennsylvania and elsewhere; but that sometimes some parts of shipments might be transferred by the White Company to a connecting carrier at Philadelphia, and perhaps elsewhere. The Tubize Company thereupon inquired about the insurance carried by the White Company and made a general requirement that the insurance should cover throughout the whole journey so that loss would be covered whether during transportation by the White Company or its connecting carriers. Some time after the endorsement was made it appeared that the policy was inspected by a representative of the Tubize Company but no criticisms were submitted and no request was made that the loss with respect to the merchandise of the Tubize Company should be made payable to it. There was no testimony in the law case and none in this case that the insurer was verbally informed of the circumstances of the negotiations between the Tubize Company and the White Company. In construing the endorsement we are, therefore, at liberty to look to the parol testimony insofar as it furnishes an explanation for the making of the endorsement, at least from the standpoint of the insured; but it is not proper to construe the endorsement more broadly than the fair import of its terms in connection with the whole of the policy, so far as the insurer is concerned. In the parol testimony there was nothing to indicate that the Tubize Company expressly required or had in mind the covering of the particular type of loss; nor that it insisted that the general policy should be changed in its scope and effect except insofar as this can be inferred to have occurred by virtue of the terms of the endorsement itself. The lack of greater concern by the Tubize Company as to the effect of the policy is possibly explained by the fact, as appeared at the hearing in this case, that the Tubize Company carried its own insurance on goods shipped by the White Company in the Insurance Company of North America, and the latter has in fact advanced under a form of "loan receipt" the amount of the loss to the Tubize Company. This fact developed by reason of the defendant's motion that the Insurance Company of North America should be made a party plaintiff in the case by reason of being really the party in interest. The motion was, however, not pressed and need not be acted on in view of the disposition to be made of the case.

The proper construction of the endorsement is not free from all doubt but considering all the circumstances I reach the conclusion that it did not cover the particular loss. Standing alone and without a careful examination of the whole of the policy contract including the main policy provision and other endorsements, and disregarding the motivating reason for the particular endorsement, its language might be regarded as ambiguous and, under the usual federal rule construed so favorably to the assured as to cover the particular loss. But when the above considerations are included, as I think they must be, the dominant purpose of the endorsement is seen to be, not to make a radical change in the general coverage of the policy but to extend the insurance coverage to losses occurring while the merchandise was in *trucks of a connecting carrier as well as while in trucks owned and operated by the assured.*

There are numerous considerations which lead to this conclusion. In the first place, the main contract very carefully and precisely limits the coverage for loss on merchandise, "while loaded for shipment on and/or in transit in or on the following described motor truck and/or trucks owned and operated by the Assured." Several of the particular endorsements emphasize the limitation of coverage to merchandise in or on the trucks. Obviously this excluded liability for loss to merchandise while located on loading platforms and not in or on the trucks. Thus, endorsement No. 26, dated March 10, 1932, in consideration of an additional premium extended the coverage of the policy, "against perils of fire and lightning only" while contained in or on the platform or loading station situated on the northeast corner of Fourth and

Spring Streets, Philadelphia, Pennsylvania, to the amount not exceeding $1,000. Again, the policy in various places and in various ways limits the risk assumed to merchandise in or on trucks owned or operated by the assured. It was due to the fact that the agent of the Tubize Company learned that the White Transportation Company at times did not wholly carry the goods to destination in its own trucks but delivered some part of some shipments to a connecting carrier that lead to the endorsement, and it is very significant that the language of the endorsement included the phrase "whether transported on the assured's trucks or not"; and it will be noted that the endorsement also was extended to cover the assured's legal liability for merchandise *as defined above*. And it is to be noted that the opening sentence of the endorsement increased the amount of liability "to not exceeding $20,000 on merchandise *on any truck* transporting merchandise for the Tubize Chatillon Corporation" —again emphasizing the limitation of liability to merchandise while in or on a truck. The purpose of the endorsement, therefore, seems to have been to extend the coverage to merchandise on the whole journey ("until such merchandise has reached its destination") "whether transported on the assured's trucks or not"; and thus to extend the coverage throughout the journey irrespective of whether the loss occurred in the assured's trucks or in those of a connecting carrier. That is to say, as the original policy covered merchandise only while in trucks, it seems unreasonable to construe the endorsement to extend it to loading platforms especially as we find that when this was intended by the insurer and the insured, a special endorsement to that effect was made.

Again, and perhaps even more importantly, the original policy did not cover the risk of theft at all. An endorsement dated December 17, 1931, extended the coverage to include theft of goods in certain trucks, under certain conditions, for which an *additional premium* was charged. This endorsement is not applicable here. There was no additional premium charge for the endorsement here relied on. The construction contended for by the plaintiff would extend the coverage, for the goods of the plaintiff only, to include any and all liability of the carrier, whether from the risks assumed or excluded by the original policy, and whether in trucks or elsewhere, all

without increased premium. This does not seem reasonably to have been within the intention of the parties.

**2. The contract period of limitation:** The contract limits the period for suit on the policy to "12 months next after the happening of the loss," with the further proviso that if there is a different statutory provision by the laws of the state where the policy was issued, then the suit must be commenced within the shortest limitation permitted under the laws of that state. The policy was issued in Pennsylvania but counsel have not called my attention to any relevant Pennsylvania statute in this connection; nor is there any here in Maryland. The *question*, therefore, is simply the construction and application of the limitation period as contained in the contract. And it will be noted that the provision is in form the same as the customary provision in the New York standard fire insurance policy with the substitution of the phrase "the happening of the loss" for the word "fire." The question therefore turns on the meaning of the phrase "the happening of the loss." The plaintiff's construction is that the loss referred to means the establishment of the loss by the judgment in the law suit which was February 14, 1934; and that the clause is, therefore, not applicable because this suit was instituted January 5, 1935. The insurer, however, says that the phrase means the date of the loss of the plaintiff's merchandise which was April 20, 1932, and therefore the clause clearly bars this suit filed more than twelve months thereafter.

I think it must be said that the ordinary meaning of the phrase "happening of the loss" would seem to be the time when the loss occurred rather than when liability for the loss was established by judgment in the law suit. The plaintiff's contention to the contrary is based on the supposed similarity of this policy to an automobile or other liability policy insuring against so-called "third party risks" where it is frequently, if not generally, provided that "no cause of action" arises on the policy until the assured's liability has been established by suit and judgment. In such a case it would be reasonably possible to construe the phrase "happening of the loss" as meaning the establishment of the liability, although the expression would have been much less awkward if it has been limited merely to "the loss." See Rogers v. Ætna Ins. Co. (C. C. A. 2) 95 F. 103, 106, 109.

I understand the customary modern form of automobile liability policy more appropriately describes the period of limitation for suit as "within two years after such final judgment," etc.

The nature of the policy here involved is, however, much more like the ordinary fire policy than a "third party risk" liability policy; especially when viewed in the light of what occurred between the parties with regard to this particular loss. There is no absolute obligation on the assured in this policy to defend against claims for loss and no provision that no action will lie against the insurer until after establishment of liability by judgment against the assured. Nor is there any obligation on the insurer to defend suits except at its option. Conversely, the provision of the policy with regard to notice and proofs of loss and the time of payment of the loss which have been above recited affirmatively indicate that the loss shall be payable by the insurer within a comparatively short period of time (at least where there is no direction by the insurer to the assured to defend a suit); and these provisions are inconsistent with the idea that the claim for the loss does not mature against the insurer until after judgment in a contested case could be obtained against the assured by the loss claimant. In the particular instance, the assured promptly notified the insurer of the loss and made claim; and the latter, without making any requirement as to establishment of the liability for the loss by judgment, denied liability. In my opinion it resulted from the provision of the policy and the actions of the parties that a cause of action immediately accrued to the assured against the insurer, if the loss was covered by the policy. Otherwise expressed, in my opinion the policy must be treated as one insuring the carrier against *liability* for loss and not as a policy merely indemnifying the carrier from actual loss resulting from establishment of liability by judgment or payment thereof. The difference between the two classes of policies was expressed by the Supreme Court of Pennsylvania in Malley v. American Indemnity Corporation, 297 Pa. 216, 221, 146 A. 571, 572, 81 A. L. R. 1322, as follows: "There are two types of indemnity insurance, sometimes called indemnity against liability or 'liability contracts' and indemnity against damage or 'indemnity contracts.' In the first class, the liability of the insured determines enforceability, in the other the policy is only enforceable *when the insured has sustained actual loss,* as by paying a judgment against him coming within the scope of the policy. The class into which particular policies fall depends on the intention of the parties as shown by their contract. Pfeiler ·v. Penn Allen P. Cement Co., 240 Pa. 468, 87 A. 623; Fritchie v. Miller's Extract Co., 197 Pa. 401, 47 A. 351." The subject is treated in substantially the same way in Richards on Insurance (4th Ed.) § 503, and in 5 Couch, Ency. Insurance Law, § 1175 (a). See also Central States Grain Co-operative, Inc., v. Nashville Warehouse & Elev. Corp. (C. C. A. 7) 48 F.(2d) 138; Sorenson v. Boston Ins. Co. (C. C. A. 4) 20 F.(2d) 640; Ohio Casualty Co. v. Beckwith (C. C. A. 5) 74 F.(2d) 75.

The dominant nature of the contract being to insure the carrier from liability with respect to certain merchandise under certain conditions and against loss arising from specified perils only, is more kindred to the ordinary fire policy than to a liability policy as against third party risks. And it is only reasonable to construe and apply the clause as to limitation of suit in such a policy in the way that the same clause in fire policies has been treated by the courts; and so applied it becomes entirely clear that this suit was barred by the contract period of limitation in the policy. It is true that there has been a contrariety of opinion in the judicial decisions as to just when the period of limitations in the modern fire policy begins to run, despite the apparent clearness of the language used. Some cases take the view that the twelve months period does not begin to run until the assured's cause of action has matured after compliance with the requirements of the policy as to proofs of loss, etc. These decisions follow the reasoning which had been earlier applied in other cases with respect to a similar clause in the fire policy when the word "loss" was used instead of the word "fire." See Richards on Insurance (4th Ed.) § 305. But even if this more favorable rule should be applied for the benefit of the assured it would not save this particular suit from the bar of limitations because it appears that the claim was promptly made upon the insurer followed by prompt denial of liability, all much more than a year prior to the institution of this suit.

3. *Plaintiff's right to sue:* Plaintiff's counsel asserts broadly the right of

the plaintiff to directly sue the insurer in this case and to recover and hold for the plaintiff's sole benefit the amount of its loss as established by the judgment in its favor. In my opinion the position cannot be maintained. The insurance contract was made between the White Transportation Company and the insurer, the loss by the conditions of the policy was made payable to the White Transportation Company alone, and the plaintiff is nowhere named in the policy as the loss payee or otherwise than in the endorsement referred to where its name is used descriptively in relation to the risk. And it is not without significance in this connection that other endorsements on the policy in favor of certain other shippers, did expressly provide that losses within the policy, of their merchandise, should be payable directly to them.

It is a broad general principle of the law of contracts that suits thereon may ordinarily be brought only by the parties thereto and "that a third person cannot sue for the breach of a contract to which he is a stranger unless he is in privity with the parties and is therein given a direct interest." German Alliance Ins. Co. v. Homewater Supply Co., 226 U. S. 220, 234, 33 S. Ct. 32, 36, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000; Second National Bank v. Grand Lodge, 98 U. S. 123, 124, 25 L. Ed. 75; Williston on Contracts, vol. I, c. 13, and particularly §§ 402 and 403; Restatement of the Law of Contracts, § 6; Pennsylvania Steel Co. v. N. Y. City Ry. Co. (C. C. A. 2) 198 F. 721, 749.

The specific application of this general rule has been well established as to most forms of insurance contracts and is particularly applicable thereto by reason of the well known characteristic of that form of contract as a personal one. In the field of insurance of property, whether against fire or marine risks, it is the well established law that no person may sue on the contract unless specifically named therein, or unless the policy contains general language inclusive of the party to be benefited. In the marine policy this is customarily accomplished by use of the expression "for account of whom it may concern". Sorenson v. Boston Ins. Co., 20 F.(2d) 640 (C. C. A. 4); Washburn-Crosby Co. v. Home Ins. Co., 199 Mass. 463, 465, 85 N. E. 592. Where a bailee intends to insure not only his own limited interest in the goods but also the full ownership therein, the customary expression in the fire policy is to describe the interest as "their own, or held by them in trust or on commission, or sold but not delivered." Richards on Insurance (4th Ed.) §§ 222, 224. So where a common carrier or warehouseman or other bailee insures only its liability and not the full ownership of the goods, it is entitled to recover only to the extent of its interest and not the full value of the goods. Richards on Insurance (4th Ed.) § 46, p. 66, and § 29; Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527, 23 L. Ed. 868; 8 Couch, Ency. Insurance Law, § 2060. And ordinarily the owner of the goods has no right of suit on the policy unless it is appropriately provided therein that the loss shall be payable to him, as was in fact done in this case with respect to certain shippers but not in the case of the plaintiff. In the life policy the beneficiaries are definitely named or specifically described. Williston on Contracts, vol. I, § 369.

Plaintiff's counsel has cited and relies upon a few cases growing out of "third party risk" liability policies where, under special provisions of the policy contract or other particular circumstances, the party not named in the contract as a beneficiary, has been permitted to directly sue the insurer. Ohio Casualty Co. v. Beckwith (C. C. A.) 74 F.(2d) 75; Slavens v. Standard Acc. Ins. Co., 27 F.(2d) 859 (C. C. A. 9). See also Globe Indemnity Co. v. Martin, 214 Ala. 646, 108 So. 761; Lackey v. Oldss & Stoller Inter-Exchange, 80 Cal. App. 687, 252 P. 672; Powers v. Wilson, 139 Minn. 309, 166 N. W. 401; Capelle v. U. S. F. & G. Co., 80 N. H. 481, 120 A. 556. Counsel for the insurer here specifically criticized these and other cases cited in support of the general proposition but in view of the essential differences between this kind of liability policy, with its varying forms and provisions, and the policy here sued on, it seems unnecessary to critically inquire whether the cases can be harmonized with the general trend of authorities which seems to be distinctly the other way. 36 C. J. p. 1129, § 129; Van Reen v. Ætna Life Ins. Co. (D. C.) 209 F. 691; 8 Couch, Ency. Ins. Law, § 1982; Vol. 5, § 1175 (d); In re Harrington Motor Co., Ltd. (Eng. Ct. App.) [1928] I Ch. 105, 59 A. L. R. 1111, annotations p. 1123; Hood's Trustees v. S. Union Gen. Ins. Co. [1928] Law Reports, Ch. Div. 793. On this subject it is said in Richards on In-

surance (4th Ed.) § 504: "The injured person has no right of action against the insurer except where it is given by the terms of the policy or by statute. If the policy is an indemnity contract or contains a 'no action' clause, the injured person has no right under the policy. Where the policy is a liability contract, the injured person may have an equitable action against the insurer as a judgment creditor of the insured." The Maryland statute (Bagby's Ann. Code of Md. 1924, vol. 1, art. 48A, § 54) is perhaps typical of the statutes which allow suit on the policy by an injured third party under certain conditions.

The plaintiff's contention is that the particular endorsement on the policy was for its special benefit and thus made it the real party in interest; and therefore entitled it to sue directly in its own name. For reasons already stated I cannot adopt this view, but if it were sound, it would be inconsistent with other contentions of the plaintiff here, in that in such case the notice and proof of loss could have been given directly by the plaintiff to the insurer and suit immediately brought on denial of liability. And if this could have been done, it becomes even clearer that the policy limitation for suit is a bar to the present action.

The question here as to the right to sue arises in rather unusual form. While the suit has been brought by the plaintiff alone the defendants include in addition to the insurer, the White Transportation Company, the assured under the policy, and its receiver. The latter has filed an answer in effect asserting the liability of the insurer and claiming the proceeds of the loss as an asset of the White Transportation Company for the benefit of all its creditors. This, of course, is a claim adverse to that of the plaintiff or materially different therefrom. It is contended on behalf of the receiver that his answer in the case substantially places him in the position of suing on the policy and therefore if the Insurance Company is liable at all there should be a recovery in this case; and it may be suggested that even though the suit is not maintainable in equity, the present flexibility of federal practice would allow the transference of the case to the law side of the court where the parties could be aligned in such a way that both the receiver and the White Transportation Company could be plaintiffs against the insurer. If the conclusion as to the coverage of the policy had been different, that

is, if the policy had covered this loss, and if the claim thereon had not been barred by limitations prior to the institution of the suit, it would be necessary to determine whether the receiver's suggestion as to further procedure could be adopted; but in view of the conclusions already reached, that the policy does not cover the particular loss, and even if it had so covered it the claim was already barred by limitations when the suit was filed, it is quite unnecessary to pass upon the point so made.

The final conclusion is that the motion of the Insurance Company to dismiss the bill must be granted, with taxable court costs allowed to the defendants.