**ARMOUR & COMPANY, Plaintiff-Appellant,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellee.**

**No. 71–1855.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1972.

Decided Aug. 20, 1973.

Peter B. Stewart, James J. Stewart, Indianapolis, Ind., for plaintiff-appellant.

Geoffrey Segar, G. Daniel Kelley, Jr., Indianapolis, Ind., for defendant-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and PELL, Circuit Judge.

SWYGERT, Chief Judge.

Appellant Armour & Company brought this diversity action in the district court against the appellee, St. Paul Fire & Marine Insurance Company. The action was founded on a contract of insurance which Thomas Thompson, doing business as T & R Trucking Company, had entered into with St. Paul. Armour alleged that T&R owed it $16,154.00 in connection with a shipment of frozen poultry which had disappeared after T&R had taken it pursuant to a shipping contract with Armour, and that the same loss had caused St. Paul to be-

come liable to T&R under its insurance contract with T&R. Armour sought—evidently as a third party beneficiary of the insurance contract between T&R and St. Paul—to enforce the obligation of St. Paul on that contract to pay T&R for the missing shipment. The district judge gave St. Paul a summary judgment, holding that the suit was barred by a contractual time limitation on claims made under the insurance policy. Armour appeals that ruling.

The crucial provision of the policy is this:

> Any claim under this Policy shall be void unless action be commenced thereon within one year from the happening of the loss or damage, unless such limitation is void under the laws of the state within which this Policy is issued, in which case any claim under this Policy shall be void unless action be commenced thereon within the shortest period of time within which an insurance company can ·limit the right of bringing suit under the laws of such state.

The shipment at issue was physically lost on or about February 17, 1968. Armour obtained judgment against T&R on July 27, 1970 (this judgment was never paid), and instituted its action against St. Paul on January 18, 1971, more than a year after the physical loss of its goods but less than a year after its judgment against T&R. We must decide whether the "loss or damage" to which the time limit in the policy makes reference includes as a matter of contract the "loss" to T&R occasioned by the July 27 judgment against it.

At the outset, we note that Armour does not question the validity of the claim limit provision however it is interpreted. Nor can it. No Indiana statute is violated by the provision, and "a provision in an insurance policy limiting the time in which suit may be brought thereon to a period less than that fixed by statute of limitations is binding, unless it contravenes a statute."

Caywood v. Supreme Lodge, 171 Ind. 410, 86 N.E. 482 (1908). This conclusion disposes of Armour's reliance on cases like Olds v. General Acc. Fire & Life Assur. Corp., 67 Cal.App.2d 812, 155 P.2d 676 (1945), Eber Bros. Wine & Liquor Corp. v. Firemen's Ins. Co., 30 F.Supp. 412 (S.D.N.Y.1939), and Trust Co. of Chicago v. Iroquois Auto Ins. Underwriters, Inc., 285 Ill.App. 317, 2 N.E.2d 338 (1936), where policy time limits on suit were found to be in conflict with a state statute. The issue before us is solely a matter of contractual interpretation.

Generally speaking, insurance policies of the broad type at issue may be separated into three categories, each characterized by a different set of prerequisites to recovery under the policy. There are, first, contracts of indemnity, where the insured is repaid only for losses which he has actually suffered, as, for example, by the payment of a judgment. This is to be distinguished from a form of liability policy, where the insured need only have had a judgment rendered against him to recover on his policy.

> "The main difference between an insurance contract of indemnity and one to pay legal liability is that, upon the former, an action cannot be brought and a recovery had until the liability is discharged; whereas, upon the latter, the cause of action is complete when the liability attaches. If, in the instant case, the policy issued to Garner ,is one to indemnify against loss, it is necessary to show an actual loss or damage before there can be a recovery; but, if the policy is a contract to protect the assured against liability merely, then an action may be maintained as soon as the liability is legally imposed, regardless of the question as to whether any actual loss or damage has been suffered. Campbell, Receiver v. Maryland Casualty Company of Baltimore, Maryland (1912), 52 Ind.App. 228, 97 N.E. 1026, 1027." Iroquois Underwriters v.

State, 211 Ind. 463, 5 N.E.2d 908 (1937).

The third category of policy is, again, a liability policy, but one wherein the insured need show only the happening of a contingency insured against, not the entry or monetary recovery of a judgment against him. It is not anomalous that policies of this sort speak in terms of the "liability" of the insured to another: "If the facts out of which the liability grows exist, the liability exists, irrespective of whether the party injured has sought to enforce it." Eberhard v. Aetna Ins. Co., 134 Misc. 386, 235 N.Y.S. 445 (1928).

The importance of this categorization becomes apparent upon examination of Rogers v. Aetna Ins. Co., 95 F. 103 (2d Cir. 1899), which Armour strenuously relies upon to support reversal. That case involved insurance issued to the owner of a steam tug to protect him against liability arising out of the operation of the vessel. The contract of insurance provided (1) "that all claims under this policy shall be void, unless prosecuted by suit at law within twelve months after the date of the loss," and (2) that the company was not liable on the policy "unless the liability of the said steam tug for such loss or damage is determined by a suit at law, or otherwise, as this company may elect." 95 F. at 106. The company cited the former provision as a defense to an action brought by the tug owner, who had been adjudged liable for damage caused by the tug more than twelve months after the date of the accident. The court rejected the defense:

The condition requiring suit to be brought within one year must, of course, be read with the other conditions, and it is to be so construed, if possible, as to render all of them consistent and harmonious. By one of them no cause of action can arise under the policy until the assured has established, by legal proceedings, the liability of his vessel for the damage caused by the collision. This he might be unable to do within a year, as in the ordinary course of legal proceedings, prosecuted with due promptness and vigor, it is frequently impossible for a party to procure an adjudication in a litigated controversy within that period. Does the policy mean that, in the event he is unable to do so, the assured is to bear the loss, and the company is not to be liable at all? It can only be given this meaning that it was devised by the company as a trap for the unwary, for no sane man would understandingly accept such a policy. Common sense and common decency forbid a construction which would permit the limitation to be operative during the period before the cause of action arises. 95 F. at 106.

In sum, the holding was that the contract between the insured and the insurer would have been impaired by reading "loss" to refer to the physical occurrence of an accident rather than the judicial ascertainment of loss.

■ This case does not present a need for a similar analysis. The policy provides, in part:

The Insured shall report to the Company or to an Agent of the Company, every loss or damages which may become a claim under this Policy, immediately such loss or damage comes to his knowledge. Within sixty (60) days after loss or damage the Insured shall make a written statement to the Company, signed and sworn to by him stating the place, time and cause of loss or damage, the interest of the Insured and all others in the property, cost price of each article lost or damaged, from whom purchased, or obtained, their value at time of loss, the amount of loss or damage claimed, the total amount of insurance carried on the property covered by this Policy, the total value of all property covered by this Policy on the date the loss oc-

curred, and the value of the property in the specific location where the loss occurred.

\*   \*   \*   \*   \*   \*

This Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality nor the invoice value whichever may be lesser; said ascertainment or estimate shall be made by the Insured and this Company, or if they differ, then by appraisers, as hereinafter provided, and; the amount of loss or damage having been thus determined the sum for which this Company is liable pursuant to this Policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this Company in accordance with the terms of this Policy.

Clearly, then, the insured need not have had a judgment against him to recover on the policy. The insured will know within approximately 120 days whether the insurance company intends to pay him or whether he or a third party beneficiary will have to bring suit to enforce his contractual rights. The value of his contract is in no way impaired by the time limitation on claims set by the policy, and the *Rogers* decision is not applicable to the facts of this case.\* *Accord,* Tubize Chatillon Corp. v. White Transportation Co., 11 F.Supp. 91, 96–97 (D.Md.1935). Further, the policy provisions just cited leave no room for argu-

---

\* By its citation of *Olds*, Armour also suggests that its rights as a third party beneficiary of the Thompson-St. Paul contract are impaired by the view we have taken of "loss or damage". In *Olds*, however, the insurance contract at issue made specific reference to the interests of injured third parties. We note, too, that

ment that the terms "loss or damage" refer to a loss by judgment or to a liability established by judgment. Plainly, the terms refer to physical loss.

The judgment is affirmed.

authority exists for the proposition that Armour has no right to sue on the instant contract. Tubize Chatillon Corp. v. White Transportation Co., 11 F.Supp. 91, 97–99 (D.Md.1935) ; Eberhard v. Aetna Ins. Co., 134 Misc. 386, 235 N.Y.S. 445 (1928).